(Decided 11th March, 1875.)

---

### WILLIAM McWILLIAMS *vs.* THOMAS HOBAN.

*Malicious Prosecution—Exemplary or Punitive damages— Want of Probable cause—Improper instruction in respect of a question of Probable cause— When the Court will decide as a point of Law that the defendant had no Probable cause for the Prosecution.*

In an action for malicious prosecution, the plaintiff is entitled to recover, if it appear that the defendant instituted, or caused to be instituted, the prosecution under which the former was arrested, maliciously and without probable cause, and that said prosecution was terminated by the discharge of the plaintiff before the institution of his action.

McWilliams *vs.* Hoban.

If in an action for malicious prosecution, the jury find for the plaintiff, they are at liberty to take into consideration all the circumstances of the case, and to award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defendant's wrongful act, but may also award exemplary or punitive damages as a punishment to the defendant for such act.

In an action for malicious prosecution, the Court may properly instruct the jury, that if they find that there were no circumstances connected with the transaction out of which the prosecution arose, which would warrant a reasonable, dispassionate man in believing the plaintiff to have been guilty of the charge made against him, and in undertaking such prosecution from public motives, then there was no probable cause for the prosecution, and the jury may infer in the absence of sufficient proof to satisfy them to the contrary, that such prosecution was malicious in law.

When a Court has to deal with a question of probable cause, after the evidence is all in, it would be highly improper to allow a particular part of the testimony, disconnected from all the other conceded facts and circumstances of the case, to be selected as the hypothesis for the determination of the jury, and upon that alone to declare there was probable cause for the prosecution, and thus defeat the action.

In an action for a malicious prosecution, the jury, provided the evidence on the subject be conflicting, may be asked whether or not the defendant, at the time when he prosecuted, *knew* of the existence of those circumstances which tend to show probable cause, or *believed* that they amounted to the offence which he charged; and if they negative either of these facts, the Judge will decide as a point of law, that the defendant had no probable cause for instituting the prosecution.

APPEAL from the Circuit Court for Howard County.

The plaintiff's second prayer, which the Circuit Court granted, prescribing the measure of damages, was as follows: "If the jury shall find a verdict for the plaintiff, they are at liberty to take into consideration all the circumstances of the case, and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defendant's wrongful act; but may also award exemplary or punitive damages as a punishment to the defendant for such wrongful

act.'' The case is otherwise sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT and ALVEY, J.

*Thomas Donaldson*, for the appellant.

*M. Colston Berridge*, for the appellee.

Even if the Court erred in rejecting the defendant's third, fourth, fifth and sixth prayers, he has not been prejudiced thereby, as the granting of his first prayer covered the entire ground, and afforded him greater protection than the principle embraced in the foregoing prayers, which were rejected. *Hall vs. Hall,* 6 *Gill & John.,* 404; *Keener vs. Harrod & Brooke,* 2 *Md.,* 74; *Mutual Safety Ins. Co. vs. Cohen,* 3 *Gill,* 482; *Stokes vs. Saltonstall,* 13 *Peters,* 191; *Snively & Keys vs. Fahnestock,* 18 *Md.,* 391.

The defendant's first prayer said: ''If the jury shall believe, from the evidence, that the proceedings before the justice, offered in evidence, were begun and carried on by the defendant, not from any malicious motive, but in an honest belief, on his part, that he had been defrauded by the plaintiff, then the plaintiff is not entitled to recover.'' It would be hard to conceive what broader instruction could be given to the defendant, as the jury were instructed that if they believed he acted from an *honest belief*, then he was not liable, thus not even demanding of him the requirements which the case of *Munns vs. Dupont* demanded, namely, *not simply a belief*, but that *that* belief should rest upon ''*circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the accused was guilty.*'' Thus the defendant may not be either a cautious or dispassionate man, and may credit circumstances in themselves weak, and which no *cautious man* would believe for a moment; and yet this instruction would protect even such a man.

BOWIE, J., delivered the opinion of the Court.

The appellee (Thomas Hoban) having been charged by the appellant (McWilliams) with artfully and corruptly embezzling money, belonging to the appellant, and one Pieper, his partner, on which charge, he was afterwards arrested, and upon hearing, the same being dismissed, sued the appellant, for falsely, and maliciously, and without probable cause, arresting and causing him to be imprisoned, etc.

The appellant pleaded he did not commit the wrongs alleged ; whereupon issue being joined, verdict was rendered for the appellee. The material facts developed in the case were as follows : The appellant and Pieper, were bakers in the city of Baltimore, and the appellee, was employed in June, 1872, as driver and salesman at certain weekly wages. It was the duty of the appellee, to receive a certain number of loaves, morning and afternoon, to be delivered to customers on his route, and to account for the same, by paying over the receipts for the same, and marking on his route book, the number of loaves delivered to any customer when paid for, designating the same by a cross.

The number of loaves delivered to the plaintiff were charged to him, and a record was made of the number and delivery in each driver's account kept in the book of the establishment. The items marked with a cross, would show the amount paid, and those not marked, those unpaid ; so that if accurately kept, the route book would furnish evidence of the sums collected by the carrier.

The appellant dismissed the appellee from his service ; and upon investigation of his accounts, supposing him to be in arrear, instituted the prosecution for embezzlement, which was dismissed or abandoned. After the evidence was closed, the appellee submitted three prayers, all of which were granted ; and the appellant, offered seven, the first, and second of which were granted, and the residue

rejected ; the action of the Court below in granting the appellee's and refusing the appellant's prayers, is the subject of appeal. The first and third of the appellee's prayers affirm, that if the jury shall find, that the defendant instituted or caused to be instituted, the prosecution under which the plaintiff was arrested, maliciously, and without probable cause, and that said prosecution was terminated before the commencement of the action, by the discharge of the plaintiff; their verdict must be for plaintiff.

2ndly. That if the jury shall find the defendant caused the arrest of the plaintiff, on the charges set out in the *nar.* and that there were no circumstances connected with the transaction, out of which the said criminal prosecution arose, which would induce a reasonable, dispassionate man, to believe the plaintiff to have been guilty of the charge made against him, and to induce such a man, to have undertaken such a prosecution, from *public* motives, then there was no probable cause for said prosecution, and the jury *may* infer in the absence of sufficient proof to satisfy them to the contrary, that said prosecution was malicious in law.

The propositions of law, contained in these prayers are conceded to be correct, but it is objected, they were improperly submitted to the jury, because they involved questions of law, and although the prayers were not excepted to on that ground below, the appellant urges, that the defects in the plaintiff's prayers in that respect, may be insisted on, to illustrate more clearly the error of the· Court, in rejecting the defendant's fourth, fifth and sixth prayers.

The appellant contends, that it was the province of the Court to decide what facts constituted probable cause, or, if the facts were not ascertained, the jury should have been instructed hypothetically, that if they found certain facts, naming them, they constituted probable cause ; and it is

not sufficient to describe them as " circumstances which would induce a reasonable, dispassionate man to believe the plaintiff guilty of the offence charged."

With regard to the form of the appellee's first and third prayers, it may be said they are almost identical in terms, with those offered by the plaintiff, in the case of *Stansbury vs. Fogle*, 37 *Md.*, 370, and affirmed upon appeal, by this Court.

In that case, as in this, the first prayer, was obnoxious to objection for assuming matters of fact, and submitting to the jury, a question of law, but the objection not being raised below, this Court refused to review the prayer.

The second prayer of the appellee in that case referring to what constituted evidence of malice, defined the essence of probable cause, (from the absence of which malice might be inferred) negatively in nearly the same words, viz: "Such circumstances as would not have induced a reasonable and dispassionate man to believe the plaintiff was guilty of the crime so charged against him, then the jury *may* infer that the defendant was actuated by malice."

This definition was objected to, as too indefinite. To which this Court replied, " This prayer with its conceded addition gave the defendant, the full benefit of the law, and the only objection that has been urged to it is, that it gives an erroneous definition of want of probable cause. In this respect, the prayer contains a simple negation of want of probable cause."

That which is generally considered the best definition of these terms, is the one given by Mr. Justice WASHINGTON, in *Munns vs. Dupont*, 3 *Wash. C. C. R.*, 31, cited with approval in *Boyd vs. Cross*, viz : " a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offence of which he is charged." But it is not necessary to follow the precise

words of this definition. It is sufficient if language of equivalent import is used.

In this case, the appellee's third prayer, is further qualified by adding to the words used in *Munns vs. Dupont*, "and to induce such a man to have undertaken such a prosecution from *public motives;*" which, the appellant argues, however true and appropriate in a judicial opinion, are calculated to mislead, when put into the shape of an instruction, to men not trained in the law.

This portion of the appellee's third prayer, is derived from the second prayer of the plaintiff, in the case of *Cooper vs. Utterback*, 37 *Md.*, 285.

It is founded on the definition of probable cause given in 2 *Greenleaf's Evidence, sec.* 454, cited by this Court in *Cecil vs. Clarke,* 17 *Md.*, 524.

The expression "public motives" used in the connection of the appellee's third prayer, clearly indicated, that the defendant should be actuated by a regard to the public good, or welfare, in prosecuting the plaintiff, in contradistinction to private ends, such as interest, malice or revenge. Admitting the difficulty of conveying in clear and concise terms, to untrained minds, the full and complete sense of technical terms, such as "probable cause," we do not perceive that the words employed, could have in any manner obscured the subject or misled the jury in this case.

The appellee's second prayer, although included in the appellant's exception, has not been objected to in his brief, or made the subject of remark in argument. This prayer prescribes the measure of damages, in the event of the jury, finding for the plaintiff.

The standard adopted is that sanctioned by the most recent authorities as well as the late decisions of this Court.

The appellant's third, fourth, fifth and sixth prayers, present various combinations of facts, which if found by the jury, are affirmed by the several prayers to furnish "probable cause" for the prosecution.

These prayers are framed upon portions of the defendant's testimony segregated from the rest and ignoring entirely the evidence of the plaintiff.

In the case of *Stansbury vs. Fogle*, this Court commenting on a prayer of the appellant defining probable cause, said, "But when a Court has to deal with such a case after the evidence is all in, it would be highly improper to allow a particular part of the testimony, disconnected from all the other conceded facts and circumstances of the case, to be selected as the hypothesis and upon that alone to deduce there was probable cause for the prosecution, and thus defeat the action. Such a course would in many instances, defeat the ends of justice." 37 *Md.*, 387.

The third prayer of the appellant, makes the failure of the plaintiff on several occasions to return and pay over to the defendant certain sums received by him, and that said failure became known to the defendant, and the money was unpaid, at the time of the prosecution "probable cause for instituting said proceedings."

The fourth, that if the jury further find, that before instituting the proceedings, etc., the defendant applied to certain of his customers to whom loaves had been delivered and charged on said book and against the numbers of which the plaintiff had marked no crosses, demanding payment and said customers had satisfied the defendant that they had paid the plaintiff for said loaves, then the defendant had probable cause to institute said proceedings.

The fifth prayer is predicated among others, upon the additional fact, that a record was kept at the establishment of the defendant, of the loaves delivered to the plaintiff and returns of sales made by him and of the amount of money received by him, and by that record it appeared that previous to the prosecution the plaintiff had received certain sums which he had failed to pay over to the defendant.

In these prayers, there is a total omission of a charge of wilful and intentional failure on the part of the plaintiff

to pay, or of a demand on the part of the defendant, and refusal of the plaintiff, to account and settle, and of the belief of the defendant, that the plaintiff corruptly and fraudulently withheld the sums charged to be due.

In the sixth, in addition to the facts stated in the fourth and fifth prayers, it is said if the jury find that on or about the 13th of September, 1872, the plaintiff admitted to the defendant that his account was short, and that subsequently and previously to the institution of the proceedings, etc., refused to pay over to the defendant, any amount which said plaintiff was short, then the defendant had probable cause.

All the facts embodied in the preceding hypothesis might have been true, and yet, the defendant have been without justification.

It entirely ignores a portion of the defendant's testimony in which he says, "that being invited by the defendant to go over his book to ascertain the amount, the plaintiff said it was not necessary, that he knew he was short, that whatever defendant would say was the amount due, the plaintiff would pay it up, as he was able to make it good ; * * * * * and some days afterwards, Tuesday, September 17, 1872, the defendant received a letter from the plaintiff, in which he said in substance, that he would have paid the amount claimed, if the defendant, had held his tongue, but as the defendant had been talking, he might now do his worst."

This letter assigned a reason for refusing to pay, wholly inconsistent with the idea, that the plaintiff was conscious of guilt, or the existence of probable cause for his prosecution ; admitting his arrears, he indignatly repelled the innuendo built upon that foundation.

The learned counsel for the appellant, has argued that proof of facts, constituting probable cause, did not require proof of the prosecutor's belief in the facts, or in the guilt of the accused, and there was no instance of a prayer of that kind.

Taylor, in his work on Evidence, p. 40, speaking of the facts to be found by the jury, in support of the presence or absence of probable cause, says, " In an action for a malicious prosecution, the jury, provided the evidence on the subject be conflicting, may be asked whether or not the defendant, at the time when he prosecuted, *knew* of the existence of those circumstances which tend to show probable cause, or *believed* that they amounted to the offence which he charged; and if they negative either of these facts, the judge will decide as a point of law, that the defendant had no probable cause for instituting the prosecution ;" for which he cites, *Turner vs. Ambler*, 10 Q. B., 252.

The appellant's seventh prayer, that there is no evidence before the jury sufficient in law to maintain the issue joined on the part of the plaintiff, is one of that general character, which has frequently been determined to be inappropriate, where there is any proof, legally sufficient.

Finding no error in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 11th March, 1875.)