# WILLIAM C. DORSEY

## *vs.*

# GEORGE WINTERS.

*Malicious Prosecution—Probable Cause—Question for Jury—Prayers—Evidence.*

In an action for malicious prosecution of plaintiff on a charge of stealing defendant's automobile, *held* that, in spite of the testimony of defendant and his son that the marks on the car in plaintiff's possession corresponded with the marks of a car stolen from defendant, the question of their identity, and consequently of probable cause for the prosecution, was for the jury.                                                         pp. 405, 406

In an action for malicious prosecution on a charge of stealing defendant's automobile, all the evidence as to the identity of the car in plaintiff's possession with one stolen from defendant, being in the control of the latter, his testimony, and that of his son, as to such identity, was not conclusive.          p. 406

That a car stolen from defendant was found in plaintiff's possession was not in itself, as a matter of law, probable cause for the prosecution of the latter for the larceny thereof, in view of the fact that the theft had occurred nearly two weeks before, and that plaintiff had promptly explained his possession of the car.                                  pp. 407, 408

The burden is upon the plaintiff to show a want of probable cause for the prosecution.                                  p. 408

That a prayer submitted a question of law to the jury cannot be considered on appeal if the objection was not made below.                                                         p. 410

A prayer that if the jury found that there were no circumstances connected with the alleged larceny which would have induced a reasonable, dispassionate person in defendants' position, and with the knowledge then possessed by them, to suspect the plaintiff to be guilty, and to induce such a person to undertake such a prosecution from public motives, then there was no probable cause for his arrest, and the jury might infer,

in the absence of proof to the contrary, that such arrest and imprisonment were not made from public motive; and in considering this question the jury might take into consideration the evidence as to plaintiff's previous good character, *held* to present correctly the law of the case.          pp. 401, 410

A prayer that if the jury find from the evidence "that defendant deprived the plaintiff of his liberty without probable cause, then the verdict must be for the plaintiff," was defective, as ignoring the distinction between malicious prosecution and false imprisonment, since, if based upon the theory that plaintiff's detention was unlawful, it should have required the jury to find as a fact essential to recovery that the arrest and imprisonment were without color of legal authority, while if it was intended to permit a recovery on the ground that defendant maliciously prosecuted plaintiff, the jury should have been required to find that there had actually been such a prosecution.          pp. 410, 411

An exception to evidence not signed by the trial court cannot be considered on appeal.          p. 411

In an action for malicious prosecution, the case being based on the contention that defendant had procured and assisted in the prosecution, it was proper to allow plaintiff to show that defendant had requested the State's Attorney who prosecuted plaintiff to postpone the case.          p. 411

The exclusion of a question, asked plaintiff on cross-examination, whether defendant "did not seem to be anxious about the prosecution at all," was not error.          p. 411

In an action for malicious prosecution of plaintiff on a charge of stealing defendant's automobile, evidence that, at the time the automobile was stolen, "there was a great deal of traffic in stolen cars," was irrelevant and immaterial.          p. 411

That a witness was allowed, in rebuttal, again to give his version of a conversation as to which he testified in chief, *held* not such an abuse of the court's discretion as to justify a reversal.          pp. 411, 412

*Decided June 25th, 1923.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by George Winters against William C. Dorsey
for malicious prosecution. From a judgment for plaintiff in
the sum of five hundred dollars, defendant appeals. Re-
versed.

The plaintiff's fourth prayer was as follows:

The plaintiff prays the court to instruct the jury that if
they find from the evidence that there were no circum-
stances connected with the alleged larceny of automobile
out of which arrest arose which would have induced a rea-
sonable, dispassionate person in the position of the defend-
ants, and with the knowledge then possessed by them, to sus-
pect the plaintiff to have been guilty of the charge made
against him, and to induce such a person to have undertaken
such a prosecution from public motives, then there was no
probable cause for the arrest, and the jury may infer, in
the absence of proof to the contrary, that such arrest and
imprisonment were not made from public motive; and in
considering this question it will be proper for the jury to
take into consideration the evidence tending to show the
plaintiff's previous good character.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Charles Lee Merriken* and *William Edgar Byrd,* for the
appellant.

*George Eckhardt, Jr.,* and *Wirt A. Duvall, Jr.,* for the
appellee.

OFFUTT, J., delivered the opinion of the Court.

William C. Dorsey, a resident of Baltimore, in August,
1919, acquired a new Ford automobile. At about eight

o'clock in the evening of October 2nd of the same year, Harry
Dorsey, his son, left it parked on Howard Street near Lex-
ington Street in that city, while he went to a theatre nearby.
When he returned several hours later the automobile had
been stolen. Nearly two weeks later, on October 15th, as
William C. Dorsey and his son, William C. Dorsey, Jr., were
driving along Lexington Street, they saw parked there an
automobile which looked to them like the stolen car. Upon a
more careful examination they were confirmed in the belief
that it was the lost car and they thereupon called a police-
man. Soon after he arrived, the appellee, who had left the
automobile on Lexington Street, came up and was about to
start it, when the policeman asked him if "it was his car,"
and when he said that it was, he was asked where he got it,
and he replied that he had bought and paid for it but he had
no "papers" for it and had bought it from strangers whom he
did not know. He was then arrested and taken before Paul
Johansen, Esq., a Police Magistrate of Baltimore City, who
committed him on the charge of stealing the automobile for
the action of the grand jury. He was later indicted on that
charge and finally tried, and upon his trial was acquitted and
discharged, and a few days later he brought this action in the
Court of Common Pleas of Baltimore City. The case was
subsequently removed to the Baltimore City Court, where it
was tried, and the verdict and judgment in that trial being
for the plaintiff the defendant appealed. The record con-
tains ten exceptions, of which one relates to the prayers and
the others to questions of evidence.

The plaintiff offered six prayers, all of which were granted,
and the defendant five, of which three were refused and the
other two granted.

The defendant's first and second prayers challenge the
legal sufficiency of the evidence to warrant a recovery, and
in dealing with them therefore we must refer in some de-
tail to the testimony. The evidence offered by the plaintiff,
if true, showed these facts: About the first of October, 1919,

two men, strangers, came to the plaintiff's home and offered
to sell him a second-hand Ford automobile for $450. After
some negotiation he accepted that offer and paid them $100
on account of the purchase price. They then gave him the
keys of the car, a registration card and the license tags.
From time to time he made payments to them, amounting
in all, with the original deposit, to $400. He did not know
the men and learned nothing of their title to the car or their
right to sell it. He took receipts for none of the payments
but the last one, and as that receipt was not offered in evi-
dence, it does not appear what names the men gave.

On the day of the arrest when he returned to the car,
which he had left on Lexington Street, he found Officer
Watchman and the defendant near it, and the policeman
asked him if the car belonged to him. He said that it did,
and he was next asked where he got it, and he answered that
he had bought it. He was then asked for his registration
card, which he produced, and upon comparing the engine
number on it with the engine number on the card, it was
found that they corresponded. The defendant then pro-
duced his registration card, but the engine number on it did
not correspond with the engine number on the car. The
policeman then said: "There are his cards; his corresponds,
yours do not. I do not know what to do about it; but Dor-
sey then said, 'It is my car; I can tell it by that little dent
in the back of the body.' That the officer then said, 'What
do you want me to do,' and Dorsey replied, 'Well, I want
you to arrest him.' That the officer told the defendant that
he knew the plaintiff's father; that the father was all right,
and that if the defendant wanted the plaintiff or the machine
that he, the officer, could get the plaintiff at any time that he
wanted to. That the defendant then said, 'That is all right,
I want him arrested, that is my car'; and that thereupon he
was taken to the Central Police Station and locked up in a
cell for about an hour and a half. That at the station house
Mr. Dorsey insisted that it was his car, and he told the judge

that it was his car; that the defendant exhibited his registration card at the station house, and that he, the plaintiff exhibited his registration card, and that as a result of the preliminary hearing at the station house the plaintiff was held for the action of the grand jury. That the witnesses at the station house were the defendant, plaintiff and Officer Watchman." At the trial of the case in the Criminal Court of Baltimore City, the defendant appeared as a witness, and on one occasion had it postponed in order to give him an opportunity to produce a witness who would testify that Winters had stolen the machine. While the case was pending the defendant went to Charles H. Osborne, Inspector of Buildings of Baltimore City, to whom Winters had applied for a position and told him that he thought Winters had "taken" his machine. The number of the Ford car bought by the plaintiff was 3185436.

Many of these facts were denied in the defendant's testimony, but as that conflict was solely a question for the jury, it is sufficient here to refer to such facts disclosed by that testimony as supplement those already stated. From that testimony it appeared that the only Ford motor car bearing engine number 3185436 stamped on it at the factory was sold to Edgar K. Smelser, of Topeka, Kansas, July 10, 1919, and he had it in his possession until November 17, 1919, when he sold it. The number originally stamped on the motor of the car bought by Winters and claimed by Dorsey had been altered by erasing certain figures and stamping others in their place. The car stolen from Dorsey had a number of marks on it which corresponded with marks on the car found in Winters' possession and which led Dorsey to identify it as his own. These marks are thus described by him in his testimony: "A mark on the back of the body right at the head; there is a bead around just below the curtain; that at the time the new car was purchased the first thing the defendant noticed was a dent in the body in the back of the bead, which dent was just about the size and

depth of a thumb; that about a week after the car had been
bought the lining on the front bow dropped; that is to say,
the threads broke and it dropped; that he took his boys to
task for not having sewed it back; that they had no white
thread, but there was a piece of white wrapping cord in the
office and a bag needle, a needle that was used in sewing up
torn bags; and that, in his presence, his boys sewed the bow
with this white cord all the way across on top of the bow,
and from the inside of the car it could not be seen that it
had been sewed with white cord. That the same cord, the
same bow and the same lining were on the car at the time it
was discovered on Lexington Street, and that another identi-
fication mark was on the fender; that after the machine was
purchased a tail light had been put on, and it had become
necessary to drill through the rear of the car. When discov-
ery was made of the car on Lexington Street the tail light
was gone, but the holes were still there that were drilled
for the tail light, and that from all these identification marks
he knew it was his car. That when the hood was raised it
was found that the engine and the hood were painted with
aluminum, very heavy coats of aluminum. The defendant
also offered evidence to show that he did nothing to cause
the arrest or the prosecution of the plaintiff, and there is also
evidence relating to the question of damages, but as it does
not bear upon the questions before us, we need not refer to it
at any greater length.

Coming to the question presented by the defendant's first
and second prayers, there was in the case, in our opinion,
evidence legally sufficient to entitle the plaintiff to recover.
Baldly stated, the plaintiff's theory is that the evidence
shows that Winters bought an automobile from persons ap-
parently in the open and lawful possession of it, and who
also had a registration card for it issued by the Automobile
Commissioner. That he paid a fair price for it and used it
openly on the busiest streets of the city. That, while in the
use and possession of it, he was at the instance of defendant

arrested, imprisoned and prosecuted for larceny, of which charge he was eventually and finally acquitted, and that upon those facts he is entitled to recover. The defendant, on the other hand, contends that, even if Dorsey did procure the plaintiff's prosecution on the charge of stealing his automobile, there was "probable cause" for that action for these reasons: That the automobile carried so many marks on it similar to marks on the stolen car that he was warranted in assuming it to be same, and that in fact it was the same; and that since he found Winters in possession of the stolen automobile about two weeks after the theft, he was justified in presuming that he had stolen it. But that the automobile which Winters bought ever belonged to Dorsey is neither conceded by the plaintiff nor conclusively established as a matter of law by the evidence, but whether it did or not is an issue of fact to be passed upon by a jury. It is true that if the identification marks on Dorsey's car before it was stolen corresponded exactly with marks on the machine bought by Winters, that would be strong evidence that they were one and the same car, but it would not be conclusive evidence of that fact. Dorsey and his sons testified that the marks on the stolen car were identical with those found on the car in Winters' possession, and that testimony was not contradicted, but the court nevertheless was not bound for that reason to assume as a matter of law that the car in Winters' possession was the one stolen from Dorsey. First, because all the evidence as to the "identification marks" on Dorsey's car when it was stolen and which he relied upon to prove that the car bought by Winters was his, Dorsey's car, was in the control of the defendant.

In the *Manitou* case, 116 Fed. 63, JUDGE ADAMS, in dealing with the effect and weight of evidence of that character offered to show that an escape of steam which caused the damage which was the subject of that suit was not occasioned by the defendant's negligence, said: "Much testimony has been given on the part of the vessel to show that every proper

precaution was taken and that every valve was closed before the vessel went to sea, but all testimony given under these conditions requires close scrutiny and it is not necessarily to be accepted unless found to be inherently worthy of belief. Where an account of circumstances leading to a loss is entirely within the control of one side of a controversy, there is more of a burden upon such party than where the matter has been open to the other side for an ascertainment of the facts." *Moore on Facts,* sec. 45. While therefore such evidence, may under some circumstances, when corroborated by other evidence have great force we do not feel that under the circumstances of this case in itself it should be accepted as conclusive of the fact which it was offered to prove.

Again while certain marks on the stolen car corresponded with marks on the car bought by Winters, there were also marks which indicated that the two cars were not the same, such as different door panels, headlights, bumper, the rear light, and the engine numbers of the two were different, and while the plaintiff contends that these differences were in themselves evidence of a sinister design to disguise the car we cannot give them any such conclusive weight or construction, but regard them as circumstances to be considered by a jury with the other facts in the case in determining the ownership of the car bought by Winters. If then Dorsey did not own the automobile, and in passing on these two prayers, we will assume he did not, the facts then are that Dorsey ordered the arrest of a stranger in the lawful possession of an automobile and charged him with the larceny thereof, because about two weeks before a car similar to that in the possession of Winters had been stolen from him. When regard is given to the vast number of automobiles to be found on the streets of such a city as Baltimore similar in appearance to the stolen car, and to the fact that two weeks had elapsed since the theft, we cannot say as a matter of law that the plaintiff failed to show that the defendant acted without probable cause in procuring the prosecution of the plaintiff.

For even if the car bought by Winters had been stolen from Dorsey, the fact that it was found in Winters' possession while a suspicious circumstance, was not in itself as a matter of law probable cause for the prosecution of Winters for the larceny thereof, in view of the facts that the theft had occurred nearly two weeks before, and that Winters had promptly explained his possession of it, in which particular this case is different from *Lasky* v. *Smith*, 115 Md. 370, where the plaintiff was in possession of property stolen the day before, and where her explanation of her possession was false.

The defendant's third prayer, which was refused, is the converse of the plaintiff's fifth prayer which was granted. Whilst the legal proposition submitted by the defendant's third prayer was sound, it submitted a proposition of law to the jury as to what amounted to "probable cause" and it may have been refused on that ground. There was however, error in granting the plaintiff's fifth prayer, by which the jury were told: "That the burden of proving want of probable cause is upon the defendants, and that the probable cause must have existed at the time of the arrest and imprisonment of the said plaintiff." That is not our understanding of the law. The general rule is thus stated in 26 *Cyc.* 85: "As a general rule the burden of proof rests upon plaintiff to show want of probable cause for such original proceeding." That rule has been approved and restated by this Court in the recent case of *Jordan* v. *Piano Company,* in 140 Md. 209, where in an opinion written by JUDGE URNER, it is said: "It is a well established rule that, in order to recover in a suit of this kind, it is necessary for the plaintiff to prove, not only that the prosecution of which he complains was instigated by the defendant and that it terminated in an acquittal, dismissal or abandonment, but also that there was no probable cause for the defendant's action. These are all essential elements of the plaintiff's case, and unless he proves each of them, he is not entitled to have the case submitted to the jury. The

accepted definition of probable cause is: 'Such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused to be guilty.' It has been held to be wholly immaterial whether or not the accused was actually guilty, if the facts known to the defendant were such as to lead 'a cautious man' to that conclusion. The want of probable cause is not to be inferred merely because the defendant may appear to have been actuated by malice in promoting the prosecution, although from the want of probable cause an inference of malice may be justified. Whether the evidence is legally sufficient to prove the want of probable cause is a question which the court is authorized to decide. These propositions have all been frequently affirmed. *Chapman* v. *Nash,* 121 Md. 608; *Moneyweight Co.* v. *McCormick,* 109 Md. 170; *Hooper* v. *Vernon,* 74 Md. 136; *Thelin* v. *Dorsey,* 59 Md. 539; *Boyd* v. *Cross,* 35 Md. 197; *Cooper* v. *Utterbach,* 37 Md. 318; *Stansbury* v. *Fogle,* 37 Md. 381; *Medcalfe* v. *Brooklyn Life Ins. Co.,* 45 Md. 205; *Hyde* v. *Greuch,* 62 Md. 577; *Torsch* v. *Dell,* 88 Md. 459; *Sappington* v. *Fairfax,* 135 Md. 186."

There is nothing in the case of *Edger* v. *Burke,* 96 Md. 715, upon which the plaintiff relies in support of that prayer, which is at all in conflict with the conclusion we have reached. When the Court there said that the burden was upon the defendant to prove that he had reasonable ground for suspecting that a felony had been committed it was dealing with a special plea of justification filed in an action for false imprisonment by the defendant who sought to justify the arrest on the ground that he was a deputy sheriff and acted upon information which justified a reasonable belief that the plaintiff had committed a felony. It was in effect a plea of confession and avoidance and necessarily the defendant assumed the burden of the facts alleged by him to avoid the consequence of the admission contained in such a plea of the facts stated in the declaration. No objection was urged in this

Court against the plaintiff's first, second and third prayers and they appear, considered abstractly, to correctly state the law to which they refer.

The plaintiff's fourth prayer is objected to on the ground that it submits a question of law to the jury but as that objection was not made below it cannot be considered here. Article 5, section 9, Bagby's Code P. G. L. of Md. Aside from that objection the prayer correctly states the law of the case, and is substantially the same prayer which this Court approved in *McWilliams* v. *Hoban,* 42 Md. 56, and the principles expressed by it were again approved in *Johns* v. *Marsh,* 52 Md. 323.

The plaintiff's sixth prayer, which was granted, instructed the jury: "That if they find from the evidence in this case that the defendant deprived the plaintiff of his liberty without probable cause, then the verdict must be for the plaintiff." One vice of that instruction is that it ignores the distinction between an action for false imprisonment and an action for malicious prosecution, and confuses the essential elements of both. "Although not always observed, the distinction between malicious prosecution and false imprisonment is fundamental. Put briefly, the essential difference between a wrongful detention for which malicious prosecution will lie, and one for which false imprisonment will lie, is that in the former the detention is not malicious but under the due forms of law, whereas in the latter the detention is without color of legal authority. In malicious prosecution plaintiff must allege and prove malice and want of probable cause and the termination of the proceeding favorably to plaintiff, whereas in false imprisonment the allegation of want of probable cause is not essential, and the burden is on defendant to prove probable cause as a defense or in mitigation." 25 *C. J.* 444. That distinction is clearly pointed out in *Lewin* v. *Uzuber,* 65 Md. 341, where it is said: "Hence the distinction at common law between the action for false imprisonment and that for malicious prosecution. The former is

a suit for trespass, and the latter an action on the case. The first can be terminated only when the arrest is made without legal process; and the latter, when the process of the law has been perverted and improperly used without probable cause and for a malicious purpose." If the prayer was based upon the theory that the detention of the plaintiff was unlawful, it is defective in failing to require the jury to find as a fact essential to recovery that the arrest and imprisonment were without color of legal authority. While if it was intended to permit a recovery on the ground that the defendant maliciously prosecuted the plaintiff, the jury should have been required to find that there had actually been such a prosecution.

This brings us to the exceptions relating to the court's rulings on questions of evidence. There are nine of these exceptions of which the first, third and fifth have been abandoned. The appellant also refers to an exception which he designates as number nine but as it was not signed by the trial court it is not before us.

The second exception relates to the action of the trial court in allowing the plaintiff to show that the defendant had requested the State's Attorney who prosecuted the plaintiff to postpone the case. Inasmuch as the case was based upon the contention that the defendant had procured and assisted in the prosecution there was no error in that ruling.

On the cross-examination of Winters he was asked whether Dorsey "did not seem to be anxious about the prosecution at all." The court sustained an exception to that question and we can discover no error in that ruling, which is to the subject of the fourth exception.

The sixth, seventh and eighth exceptions relate to the exclusion of evidence to show that at or about the time Dorsey's automobile was stolen there was "a great deal of traffic in stolen cars." Such testimony was clearly irrelevant and immaterial, and was in our opinion properly excluded. In the course of his testimony Winters testified to a conversation with the policeman, Watchman. Watchman in his testimony

gave a different and more detailed version of the conversation. Winters was then allowed in rebuttal to again give his version of the conversation. The question objected to was not in proper form, and technically the evidence sought was not proper rebuttal, but under the circumstances we do not find that the defendant was injured by the ruling or that there was any such abuse of the discretion reposed in the trial judge as would justify a reversal.

For the errors indicated in granting the plaintiff's fifth and sixth prayers it follows that the judgment appealed from must be reversed.

> *Judgment reversed and new trial awarded, with costs to the appellant.*