## GARY v. CONSOLIDATED FORWARDING CO. (two cases).

### BERTRAND v. SAME.

### Nos. 7266–7268.

Circuit Court of Appeals, Seventh Circuit.

Oct. 30, 1940.

Rehearing Denied Dec. 14, 1940.

Dougherty, Arnold & Kivett and Suel O. Arnold, all of Milwaukee, Wis., for Consolidated Forwarding Co., defendant-appellant and defendant-appellee.

Gold & McCann, W. L. Gold, and Ray T. McCann, all of Milwaukee, Wis., for Evelyn Gary and Mary Bertrand, plaintiffs-appellees and plaintiff-appellant.

Before EVANS and TREANOR, Circuit Judges, and BRIGGLE, District Judge.

Plaintiffs Bertrand and Gary each sued defendant trucking company for injuries sustained when the car in which they were riding was forced off the road by defendant's truck. The actions were consolidated for trial and separate special verdicts[1]

---

[1] "1. Did a truck owned * * by defendant * * collide with or force off from * * the highway * * the automobile (of plaintiffs) * * ? Answer: Yes.

"2. Was the driver of the truck negligent * * *

"a. in deviating from the traffic lane in which he was operating his truck? Yes.

"b. in failing to yield the right of way? Yes.

"c. in respect to lookout? Yes.

"d. in respect to giving a signal of his intention to travel in the east lane? Yes.

"e. in increasing the speed of the truck? Yes.

"3. * * Was the collision the natural result of the negligence on the part of the driver of the truck * * *

"a. (see 2a). Yes.

"b. (see 2b). Yes.

"c. (see 2c). Yes.

returned, favorable to each plaintiff, which were modified and reduced by the trial court and the judgments then entered thereon. Defendant appeals from both judgments, and plaintiff Gary, in her appeal, challenges the ruling of the court which reduced her verdict.

The appeals were consolidated for argument and will be disposed of in one opinion.

EVANS, Circuit Judge.

The appeals raise three major questions: (1) Does the evidence support the jury's verdict that it was defendant's truck that was involved in the accident? (2) Was the trial court justified in reducing, by ten per cent., the amount of damages fixed by the jury, because of the contributing negligence of one of the plaintiffs—the driver of the automobile? (3) Did the court err in reducing the jury's award to Gary from $1,000 to $467?

Plaintiff Gary, in partnership with another, owned a dress shop in Milwaukee. She had a "drawing account or salary" of $35 a week from the business.

On July 20, 1938, she was on her way to Chicago, with Miss Bertrand, a teacher, and two others, to buy a dress for Miss Bertrand and a coat for one of the other women. Miss Bertrand was driving Miss Gary's car. They testified they had been driving behind a red truck for about fifteen minutes when Miss Bertrand decided to pass it and sounded her horn. When her front wheels were abreast the trailer's rear wheels the truck veered into the passing lane to avoid a stalled truck ahead of it, and the plaintiff's car was forced off the road and struck a culvert, causing the accident and injuries complained of.

(1) *Identity of Truck Involved in Collision.* Despite the unsatisfactory identification proof, we are, nevertheless, satisfied that a jury question on this issue was presented. With equal certainty we are satisfied that the evidence both as to plaintiffs' and defendant's negligence necessitated presentation to and determination by the jury.

Plaintiff Gary identified the truck by color and the word "Consolidated" printed on the back of the trailer. A state transportation inspector remembered seeing a Consolidated truck passing south of the scene of the accident shortly before the accident came to his attention. As against the de-

"d. (see 2d). Yes.

"e. (see 2e). Yes.

"4. Was the plaintiff Mary Bertrand negligent

"a. in sounding her horn? No.

"b. in respect to control of the automobile? No.

"c. *in the manner of overtaking and attempting to pass the truck?* Yes.

"d. in the manner of applying her brakes? No.

"5. *Was the collision the natural result of the negligence* on the part of the plaintiff Mary Bertrand.

"a. (see 4a) No.

"b. (see 4b). No.

"c. in the manner of overtaking attempting to pass the truck? *No.*

"d. (see 4d) No.

"6. What proportion of all the negligence that *produced* plaintiff's injury is attributed to her? 10%.

"7. At what sum do you assess the * * * damages sustained by * * * Bertrand:

"a. in respect to medical * * expenses * * * $182.20

"b. in respect to personal injuries * * * 750.00

"c. for loss in wages and earnings 115.00".

(Court reduced this special verdict by

10% ($104.48) making net verdict of $942.48.)

The special verdict as to plaintiff Gary was identical with the above quoted one of plaintiff Bertrand, from questions 1 to 5 inclusive. Thereafter the Gary special verdict read:

"6. * * * Did the plaintiff Gary fail to use ordinary care for her own safety and thereby contribute to produce her injuries? No.

"7. In case you find the plaintiff Evelyn Gary was negligent, * * * What proportion of all of the negligence that produced plaintiff's injury is attributed to her? ......%

\* \* \* \* \* \*

"9. At what sum do you assess the total amount of damage sustained by the plaintiff Evelyn Gary?

"a. in respect to medical expenses $ 420.25

"b. in respect to personal injuries 2,500.00

"c. damages to her automobile 600.00

"d. for loss in wages and earnings 1,000.00"

(Court reduced Gary's special verdict, by reducing loss of earnings from $1,000 to $467, leaving damages at $3,987.25, which he further reduced 10% ($398.72) leaving net verdict of $3,588.52.)

fendant's accused driver's testimony that he passed the scene of the accident more than an hour later, and that he knew of no accident, these facts seem fragmentary. There was almost no rational explanation other than the truck was defendant's. We are, of course, not making independent findings, but merely holding that the evidence was such that a jury might well have found, as they did find, that it was *defendant's* truck that turned into the left lane as plaintiffs were attempting to pass.

■ (2) *Reduction of Damages by Ten Per Cent for Plaintiff's Negligence.* On the negligence issues there was ample evidence of neglect on the part of both the driver of the truck and the driver of the car. Again it is not a case of weighing evidence, or determining veracity. We must assume that the jury could and did accept plaintiffs' testimony. On such assumption defendant's negligence was established. Likewise, and with equal certainty, we are convinced that the jury was well-sustained in finding that the driver of the automobile was, herself, also negligent. (Answer to Question 4(c).)

■ Plaintiff's negligence consisted, so the jury found, in persisting in her effort to pass the truck when it was apparent to her that the truck was in the left lane. Her persistence in this respect, led to her driving her car off the cement and ultimately into the culvert. It is true, defendant may have been negligent in taking the left lane in view of plaintiff's sounding her horn and her effort to pass him. That, however, did not justify plaintiff in continuing her effort to go when doing so was at the cost of safety and a resulting collision with a culvert.

■ The evidence sustained the jury's finding that ten per cent. of the negligence "producing her injuries was attributable" to her. Accepting the verdict as to her negligence, we are satisfied that the percentage of damage attributed to her fault was at least as great as ten per cent. However, as this percentage of fault issue is, like the negligence issue, a jury question, we (as did the District Court) leave this finding undisturbed.[2]

More doubtful was the trial court's action in changing the answer of the jury to question 5 (c) of the special verdict. The jury found defendant negligent. It also found plaintiff negligent in driving the passenger car. It found that ten percent. of plaintiffs' damages were produced by the driver's negligence. It then answered the alleged causal relation question in the negative. This last answer, the trial court changed because not sustained by the evidence.

■ An examination of the evidence upon which the jury found plaintiff negligent makes it impossible for us to reconcile its answer to subsection c of question 5 of the special verdict with the answer to question 4, subsection c which found plaintiff negligent "in the manner of overtaking and attempting to pass the truck." If this answer to question 4 (c) be accepted, and it must be, both on the evidence (and its acceptance thereof by plaintiffs' counsel), there was no controverted issue to go to the jury as to the "natural result" thereof.

This was the trial court's conclusion as stated in his memorandum supporting the ruling which changed the answer to 5 (c).

If plaintiffs were negligent as the jury found, it was quite impossible for that negligence to have no causal relation to the accident. It was (on the evidence showing negligence in this case) one of the proximate causes of the accident. The court properly changed the answer to this question. This, of necessity, resulted in a ten percent. reduction of the recovery.

(3) *Reduction of Gary's Damages for Wages and Earnings from $1,000 to $467.*

■ The trial court apparently allowed the full wage loss from July 20 to October 21, a period of thirteen weeks and two days, at $35 per week, but disallowed for later and intermittent absences from October, 1938, to November, 1939, which absences numbered approximately seventy-five days. See answer to Question 9 d.

The only testimony in regard to loss of earnings came from Miss Gary, who said:

"Q. Now, in your business did you have a drawing account of so much a week, or did you get a salary? A. Yes, sir.

"Q. How much was that? A. $35. I went back to work on October 21. I went back to work as soon as I was able. * * * A. I have not been able to continue my work steady since I returned to my employment on October 21, 1938. At the request of my counsel I have prepared from

---

[2] Wisconsin has by statute adopted the comparative negligence doctrine in negligence cases. Sec. 331.045, Wisconsin Statutes.

my books of account a statement showing the full days I was unable to be at my place of business because of my illness. (This was the exhibit which listed 75 days' absence.)"

There was no direct evidence that the business suffered from her absence, save as one may infer that some loss was sure to occur. But how much? What facts afford a basis for a verdict of $1,000 for loss of wages *and earnings* in addition to damages for medical expense, personal injuries, and damage to automobile? In the trial court's opinion, there was no evidence to sustain an alleged loss of earnings, after he had made an allowance for wage loss.

Defendant also here argues that the loss was one which the partnership, rather than the plaintiff Gary, suffered. In other words, the Wisconsin decisions (Verhelst Const. Co. v. Galles, 204 Wis. 96, 235 N.W. 556; Culbertson v. Kieckhefer Container Company, 197 Wis. 349, 222 N.W. 249; and Campbell v. Sutliff, 193 Wis. 370, 214 N.W. 374, 53 A.L.R. 771), which hold that the payment to an employee of the latter's wage during illness, does not prevent the employee from recovering such damages from a tort-feasor, are distinguishable. This question, we need not decide, in view of our conclusion that the evidence of earnings was not sufficient to sustain an award which included them.

Other issues have been duly considered, but we think they need not be separately discussed.

The judgments are affirmed.