MORRIS ET AL. *v.* TWIGG ET AL.

[No. 124, October Term, 1947.]

*Decided April 21, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*W. Earle Cobey,* with whom was *Wm. R. Carscaden* on the brief, for the appellants.

*Harry I. Stegmaier* and *Edward J. Ryan* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

I. Marguerite Twigg and Richard B. Twigg, a service station attendant, brought actions at law in the Circuit Court for Allegany County, against Glenn Morris and Morris Motor Express, Incorporated, for injuries sustained by Mrs. Twigg in an automobile accident. The cases were tried together before a jury and resulted in judgments for the plaintiffs, after the court had refused to grant the defendants' demurrer prayers. The appeals are from the Court's refusal to grant motions for judgment N. O. V. The sole question presented is whether there was legally sufficient evidence to identify the truck, owned by the corporate defendant, as the one which caused the accident.

At about 11 P. M. on the night of May 22, 1946, Twigg and his wife were returning in their 1941 Chevrolet coupe from Cumberland to their home in Everett, Pennsylvania, on Route 220, a concrete highway 18 feet

in width, excluding shoulders. It was a clear, moonlight night, and the road was dry. Twigg was driving at the rate of from 40 to 45 miles per hour, and playing the radio. When he reached a point about 16 miles from Cumberland, near Rose's Camp, he overtook and passed an automobile going in the same direction. Mrs. Twigg remarked: "That is Sam Leonard." Twigg blinked his lights, and Leonard blinked back in recognition. About 4 miles further on, after passing the intersection of the Rainsburg road, they came to a sharp bend in the road. Twigg testified that the curve was to his right; however, he also testified that he was on the outside of the curve, which would indicate that the curve was to his left. In the middle of the curve he suddenly encountered a truck coming in the opposite direction, "and he was taking his half out of the middle of the road. * * * so I swerved my car to the left to avoid a collision * * * it started to fish-tail around on the road, and I lost control of it and went down over the bank to the left to the creek, and my wife went through the windshield. * * * As I met this vehicle, just sort of a side view out of the corner of your eye, I saw it was an outline of a truck, a post-type body." He further testified: "It was a Ford truck, about 1½ ton * * * it had a bed on it, sort of a box-type bed; * * * it had no marker lights like Pennsylvania trucks, just a headlight * * * the two headlights." He testified that the truck did not dim its lights, which were on "high beam", but denied that he was blinded by the lights.

In cross-examination, Twigg testified that he first swerved to his right, so that his right wheels were off the concrete. The truck went by on the truck driver's "right * * * his own side of the road". Twigg then "cut it [his car] back so as not to hit the guard rail, and I lost control of it and went over the bank" on the opposite side, after the truck had passed. There was no contact between the two vehicles. He saw "the outlines of a truck * * * a light truck. * * * At that time I couldn't say it was a stake truck; I saw the black out-

line of a body and his headlights being high, I saw it was a truck, and I could see the body extending beyond the cab."

When the car came to rest, Twigg realized his wife was badly cut. His first "thought was to get out and flag down Sam, who I knew was not far behind." Leonard came along as he reached the road. They put Mrs. Twigg in Leonard's car, and started for Cumberland, driving from 55 to 60 miles per hour. Twigg testified: "I think Sam was not more than two minutes behind me and not more than four minutes at the very most, we had Marguerite out of my car and up in his car." Leonard could not recall passing any truck before he reached the scene of the accident. When they reached the outskirts of Cumberland, near the plant of the Harris-Boyer Bread Company, they overtook a truck proceeding at a moderate rate of speed, and passed it. They "flagged him down", and Twigg told the driver, Morris: "you run us off the road back there, and you have damn near killed my wife * * * you follow me to the hospital." Morris told Twigg: "you must be wrong." He followed Leonard to the hospital, but denied then, and has ever since denied, all knowledge of the accident. He admitted passing over Route 220, after having supper at Beachwood Inn. He testified that his speed was never greater than 30 to 35 miles per hour.

Twigg testified that when he examined Morris' truck at the hospital he saw it was a "Stake-type body * * *. The outline of the truck at the time of the accident, without marking lights, when I come up on it at the Harris-Boyer Bread Company I was convinced it was the same truck and at the Memorial Hospital, where I got a good look at it, there was no doubt in my mind." It was "the same type truck * * * a ton and a half truck without marker lights * * * the lights were one of the main factors in it, the lack of marker lights". He did not know there were any passengers in the truck until they "flagged it down". Then he saw for the first time that there were two persons beside the driver in

the cab. The truck was not loaded. Mrs. Twigg testified that a truck, a few feet over the center line, forced them off the concrete; she was unable to identify Morris' truck as the one involved in the accident. Morris, the President of the corporate appellant, testified that the truck he was driving on the night of the accident was a Chevrolet, with a canvas covered body, supported by stakes. He stated that he did not pass any car on the curve in question, and that he always dimmed his lights when meeting other vehicles. He was corroborated in every particular by the two persons who were riding with him.

It is apparent that the plaintiffs' whole case rests upon Twigg's identification, based on a momentary glimpse of the vehicle he tried to avoid. His conclusion that it was Morris' truck has no evidential value, apart from the observation upon which it was based. Upon analysis, the differences seem to exceed the similarities. He states that it was a Ford truck; Morris' truck was a Chevrolet. He refers to the "Box-type bed" extending beyond the cab; Morris' truck did not have a "box-type bed", but had a "stake type" body, covered with canvas. Twigg "couldn't say it was a stake truck" at the time of the accident. The "main factor", by Twigg's admission, was the absence of marker lights, which he seemed to think were required by law.

Morris' truck was licensed in Maryland. Under the Maryland law, § 216, Art. 66½ of the Code (1947 Supp.) vehicles more than 80 inches in width are required to have "clearance lamps," while vehicles, or combinations, more than 20 feet in length must have "side-marker lamps". Neither of these requirements are necessarily applicable to light trucks of the standard ton and a half variety. The width of Morris' truck was not shown. The same provisions appear to be applicable to vehicles licensed under the law of Pennsylvania. See *Purdon's Pennsylvania Statutes*, Title 75, § 351(f) (75 P. S. § 351). Similar provisions are found in the Uniform Act regulating Traffic on Highways, Art. XV, § 58,

adopted in at least 20 states. The absence of marker lights or reflectors can in no way distinguish the truck in question from thousands of similar trucks upon the highways. Twigg was unable to state the color of the truck, or any distinguishing signs or marks upon it.

According to Twigg, they started for Cumberland within four minutes. The offending truck had disappeared, undetected by Leonard, who covered the main road to the point of the accident within two minutes after it occurred. It is remarkable that Leonard could not recall meeting a truck in that interval, if he did so, when the matter was so quickly and vividly brought to his attention by his friends' accident. A rational inference would be that the offending truck turned into the Rainsburg road. If it is true that Morris drove at the rate of 30 to 35 miles per hour, as stated by him and his passengers, Leonard, driving at the rate of 55 to 60 miles per hour, would have overtaken him, with a four minute start, long before he reached Cumberland. Accepting the testimony as to the relative speeds, to the point of interception, Morris must have passed the scene of the accident about 10 or 15 minutes before it occurred. It may also be noted that Morris made no effort to escape. His actions were wholly consistent with innocence. On the other hand, the offending truck could have escaped by turning into the Rainsburg road, or any one of a number of intersecting roads, or have passed beyond Cumberland by the simple expedient of increasing speed. There was no hot pursuit, and the mere fact that Morris' truck was intercepted at a point 20 miles from the scene of the accident has slight probative value.

The Maryland cases shed little light upon the problem before us. In *Epstein v. Ruppert*, 129 Md. 432, 99 A. 685, the plaintiff testified that he was struck by a truck while alighting from a wagon. The truck driver admitting driving his truck past the wagon, from which the plaintiff was about to alight, but denied striking him. The main question was as to ownership and agency, rather than identity. In *East Baltimore Transfer Co. v. Goeb,*

140 Md. 534, 118 A. 74, the identification was by testimony as to the license number of the offending vehicle, taken by an eye-witness. In *Dorsey v. Winters*, 143 Md. 399, 404, 122 A. 257, the owner identified his car, which had been stolen, by a number of distinctive marks identical with those on the car in question. In *Davidson Transfer & Storage Co. v. State, for Use of Brown*, 180 Md. 63, 22 A. 2d 582, there was testimony that the accident was caused by the action of appellant's truck driver in attempting to pass other trucks in a line of traffic at the crest of a hill. The defendant's evidence tended to show that the attempt was made by an unknown truck in the same line of traffic, but the testimony of other eye-witnesses definitely fixed the blame upon the defendant's driver, and made the question one for the jury.

In *Brown v. Bendix*, 187 Md. 613, 617, 51 A. 2d 292, 296, the plaintiff called the driver of the defendant's car to the stand, and proved by him that he was proceeding past the scene of the accident at about the time it occurred. He did not ask the witness whether his car struck the plaintiff, nor did he prove this fact by his other witnesses, although one of them took the license number. The trial court refused to allow the plaintiff to amplify his proof at the close of the plaintiff's case, although the point had not been raised by the defendants. We held that there was *prima facie* proof of ownership and agency under the pleadings and testimony. Upon the question of identity, we said: "there was no real issue in the case as to whether Cowman was driving the car that struck the plaintiff. * * * We think it may properly be treated as a concessum in the case." In the case at bar there was no issue as to negligence or as to ownership or agency. The sole defense was upon the question of identity.

The appellee relies strongly upon the case of *Arnold v. Owens*, 4 Cir., 78 F. 2d 495, where a pedestrian was struck by a tractor-trailer. There was evidence in that case, however, as to the distinctive color of the trailer and its load. The defendant's vehicle was seen passing

a filling station 250 yards from the scene of the accident immediately afterwards. Moreover, the defendant called at the plaintiff's home the next day and admitted being at the scene of the accident, although he said he did not think he hit the plaintiff. The evidence of identity was held sufficient, even without other evidence as to the defendant's offer to pay hospital expenses. As to the effect of admissions, see also *Frasciello v. Baer,* 304 Mass. 643, 24 N. E. 2d 653. In *Gary v. Consolidated Forwarding Co.,* 7 Cir., 115 F. 2d 632, the identification was based on the color and name of the Company appearing upon the truck, corroborated by testimony that the defendant's truck was seen leaving the scene of the accident. In *Devlin v. McCauley,* 295 Pa. 101, 144 A. 828, a red touring car, involved in an accident, was pursued and apprehended a short distance from the scene of the accident, and identified by a broken headlight.

Without prolonging this opinion by the citation of other authority, we may say that we think Twigg's testimony, taken in connection with the other circumstances shown, was legally insufficient to prove identity. Even apart from the discrepancies noted, there was nothing to distinguish the light truck observed from any other. The fact that Morris was admittedly in that vicinity at about the time of the accident does not in itself established a "preponderance of probability". *Baltimore & O. R. Co. v. Shipley,* 39 Md. 251, 257. Compare *Acme Poultry Co. v. Melville,* 188 Md. 365, 372, 53 A. 2d 1, 4. Twigg admitted that there was other traffic upon the road. Although circumstantial evidence alone may be sufficient to support a rational inference in many cases, it cannot "sanction conjecture." *Perdue v. Brittingham,* 186 Md. 393, 47 A. 2d 491, distingiuishing *Krell v. Maryland Drydock Co.,* 184 Md. 428, 41 A. 2d 502. Here the other circumstances are largely exculpatory.

*Judgments reversed, with costs.*