HARDING ET VIR. *v.* ALPHA VAN LINES, INC.

[No. 161, September Term, 1960.]

*Decided March 28, 1961.*

598

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, MARBURY and SYBERT, JJ.

*Robert E. Bullard,* for appellants.

*Albert E. Brault,* for appellee.

MARBURY, J., delivered the opinion of the Court.

The appellants, plaintiffs below, appealed from a judgment for costs entered in favor of the appellee, defendant below, by direction of the trial court withdrawing the case from the jury at the conclusion of the plaintiffs' evidence on liability on the ground that there was insufficient identification of the vehicle which allegedly caused the accident.

On Tuesday, August 5, 1958, in a 1953 Chrysler sedan driven by Mr. Harding, Mr. and Mrs. Harding were proceeding south on U. S. 301 in Prince George's County to their home in St. Mary's County, after visiting a doctor in Washington. U. S. 301 at that time was a dual highway paved for two lanes of traffic south bound, separated by a median strip from a similar pavement for traffic north bound. At 2 P.M., or shortly thereafter, on a bright, clear day as Mr. Harding was driving in the right lane, approaching the Mc-Kendree Road, a car in the left lane in front of him slowed to make a left turn; at this moment a van, close behind this car, and about to pass the Harding car, cut to the right, forcing the Hardings off the road and into the back of a trailer loaded with lumber, parked on the right shoulder of the road. The Harding car was damaged along its right side, and Mrs. Harding was injured. The Hardings caught only a brief

glimpse of the van as it passed alongside in the moment before their car rammed into the parked trailer. The entire episode was observed by a passenger in the car preparing to make the left turn, who after the van disappeared to the south, then went over to the Hardings and left her card and a description of the van with Mr. Harding. State Police arrived and took pictures. Mrs. Harding was taken to a Washington hospital in an ambulance. Depositions taken nearly a year later uncovered the fact that two of the defendant's vans had left Alexandria for Tall Timbers in St. Mary's County the day of the accident. The first had broken down at Oraville, a distance of approximately twenty-five miles from the scene of the accident, about 10:00 o'clock that morning, and the other was dispatched to replace it. Both vans had traveled from Alexandria through Washington on Route 5 to T. B., Route 301 to Waldorf, then Route 5 and Route 235 toward Lexington Park. The second van picked up the first crew and drove on to Tall Timbers. They arrived too late for their customer, so returned to Oraville and towed the first van back to Alexandria.

The principal question involved in this case is whether there was sufficient identification of the offending vehicle to require submission of the issue to the jury. This question has not often been before this Court for consideration. See *Morris v. Twigg,* 190 Md. 324, 58 A. 2d 719, where Judge Henderson analyzes all prior decisions of this Court concerning identification of motor vehicles. The appellee relies strongly upon the *Twigg* case in claiming that this question in the instant case was correctly answered in the negative by the trial judge in his ruling below.

In that case the plaintiff brought an action for injuries sustained at night when an oncoming truck, while rounding a curve, forced his vehicle off the road. The identification of the truck was attempted to be established by the testimony of the plaintiff, who only had a momentary glimpse of it. There were no other witnesses to the accident. Defendant in that case testified that he was in the vicinity at the time of the accident, and in addition that he was intercepted twenty

miles from the scene of the accident. This Court held that the evidence was insufficient as to identification to merit its submission to the jury. The momentary glimpse of the automobile by the plaintiff had little, if any, evidentiary value and the defendant's admission of being in the vicinity of the accident did not in itself establish a preponderance of probability under the circumstances. Moreover, the identification by the plaintiff did not correspond with the proven characteristics of the truck.

In this case we have a disinterested witness, Mrs. Turner, who was riding as a passenger (not the driver as indicated by the trial judge in his opinion), who testified that she recalled identifying the truck as "Alpha line", "Alpha van" to Mr. Harding immediately after the accident. This was corroborated by Mr. Harding. The record shows that the second van dispatched by the appellee from Alexandria had "ALPHA" painted on each side, followed by "van lines" in small letters, and "ALPHA" in large letters across the back. This to a degree corroborated the testimony produced by the plaintiffs. As to the color of the truck, it was established at the trial that the truck is painted a cream on top and "red" on the bottom, with a black band between. Mr. Harding testified that the van appeared "either brown or maroon"; Mrs. Harding that it was "either dark maroon or brown"; and Mrs. Turner said it was a "dark color. It was dirty."

Mr. Harding testified that the van was "a six-wheel truck; * * * two front wheels, dual wheels in back", and that it was a closed truck. This was in accord with the description of Alpha's second truck given by its employees. Mrs. Turner characterized it as an "older van with closed body."

There is also evidence that the first truck broke down at 10:00 A. M. 25 miles beyond the scene of the accident. The second truck was dispatched from Alexandria, Virginia, about 1:30 or 1:45 according to the pretrial deposition of the driver Connellee who, at the time of the trial, testified that he left Alexandria about 2:00 o'clock. The first truck which broke down left Alexandria about 7:30 or 8:00 o'clock. This was during the rush hour period of the day, but the driver called

in about 10:00 o'clock to report his difficulty, when he was a distance of about 52.3 miles from the Alexandria motor pool, his point of departure. Kidd, the driver of the first truck, testified that the second arrived around 3:00 or 4:00 o'clock.

In this case we not only have the testimony of the two plaintiffs as to the kind of truck and its coloring, but we also have the clear testimony of an independent witness who testified as to the names Alpha or Alpha Van Lines painted on the truck, together with the location Alexandria or Roanoke. In addition to this it is admitted that the second, or relief, truck of the defendants traversed the scene of the accident during the afternoon of August 5, and the jury should have been allowed to weigh the credibility of the defendants' employees who were called to testify by the plaintiffs, including the accuracy of what they related, as well as the possible bias.

We think the *Twigg* case is distinguishable on the facts and that the facts in this case more closely resemble those in the case of *Arnold v. Owens,* 4 Cir., 78 F. 2d 495, where a pedestrian was struck by a tractor-trailer. There was testimony that the truck was in the vicinity of the accident about the time that it occurred, even though it was not apprehended by the state highway police until it was about to enter a city some ten miles distant. The Court, through Judge Soper, held that the identity of the offending vehicle was a jury question, even though there was a substantial conflict in the testimony as to the color of the trailer slats, that there were no pedestrians at the place where the accident occurred when the truck passed, and further, where it was shown that there were numerous side roads and lanes between the point of the accident and the place where the truck was stopped.

Positive identification need not be established for the plaintiff to prevail. The surrounding circumstances and inferences drawn therefrom may so substantiate a partial identification as to afford a basis for the verdict of a jury. The plaintiffs and their witnesses gave perhaps as good a description of the truck as might have been expected under the circumstances.

At the trial below the plaintiffs, after it had been shown that the offending vehicle was identified as having "ALPHA"

painted on the back and sides, and defendant's van was so painted, offered in evidence certificates of the Interstate Commerce Commission and State Corporation Commission of Virginia, which showed that there were but two Interstate Commerce Commission certificates of public convenience and necessity issued to names beginning with Alpha, and to show that there were but two corporations of the State of Virginia whose names began with "Alpha" whose purposes included the operation of motor vehicles at the time of the accident. There were also offered in evidence certified copies of listings of all Maryland vehicles registered to names beginning with Alpha on the date of the accident to show the paucity of such registrations, and that they were not of the type or origin of the offending vehicle described by Mrs. Turner. We think that these documents were proof of a limiting character, when considered with the other evidence as to the identity of the offending vehicle, and should have been admitted in evidence.

The defendant contended that after calling defendant's driver as a witness, the plaintiff was bound by his statements that tended to show he could not have caused the accident solely because of the time he claimed to have left Alexandria, and the speed he claimed he drove. The general rule that a party who calls his adversary as a witness is bound by him unless he is contradicted or discredited, is "not to be interpreted as meaning that a party is bound by each and every statement made by an adverse witness called by him" and "the testimony of a witness may be contradicted or discredited by circumstances as well as statements of other witnesses, and a jury is not bound to accept a witness' testimony as true if it contains improbabilities, or if there are reasonable grounds for concluding that it is erroneous." *Proctor Electric Co. v. Zink,* 217 Md. 22, 141 A. 2d 721, cited in *Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886.

We think the trial court committed reversible error in its rulings upon the evidence and in directing a verdict for the defendant.

*Judgment reversed, case remanded for new trial, appellee to pay costs.*