TRUSTY, ET AL. *v.* WOODEN

[No. 358, September Term, 1967.]

*Decided November 8, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Joseph F. Lentz, Jr.,* with whom were *Peter J. Karceski, Jr.* and *Monfred & Lentz* on the brief, for appellants.

*Matthew Swerdloff,* with whom were *Myer E. Grossfeld* and *Allan B. Rabineau* on the brief, for appellees.

McWilliams, J., delivered the opinion of the Court.

At the conclusion of appellants' (plaintiffs') case the trial judge, Russell, J., directed a verdict in favor of the appellee (Mrs. Wooden).[1] They, Trusty, 16, and Cousins, 17, assign error. We have found none.

In March 1965 appellants lived within a block of each other, near Lake Ashburton, in Baltimore City. Homeward bound from school, on the afternoon of St. Patrick's day, they were walking downhill on Longwood Street. Recent snow lay round about. They had almost reached the junction of Longwood Street and Carlisle Avenue when they were struck by Mrs. Wooden's 1961 Chevrolet. To recover for their rather slight injuries they filed suit in the Baltimore City Court on 26 October 1965. The case was reached for trial on 9 October 1967.

There are residences on only one side of Longwood Street. On the other (east) side is Hanlon Park. A paved walk, 3 feet wide, runs parallel to the curb, about 5 inches high, in front of the properties on the west side. There is grass on both sides of the walk. Cousins testified he was walking on the grass between the houses and the walk when he was struck by Mrs. Wooden's car. It came to rest, he said, in a "slanted position" on an "embankment" in front of one of the houses. Neither he nor Trusty saw the car before it struck them. Mrs. Wooden, he continued, asked them if they "wanted to go to the hospital" but they declined because "at the moment *she* was a little shaken up." (Emphasis added.) They told her they would rather go home since they lived just "around the corner." Mrs. Wooden, Olivia Neuman, her passenger, and the appellants all walked (about 2 blocks) to Cousins' house. Later on both boys

---

1. Appellee was Dorothy Mae Wooden at the time of the accident. At the time of trial she was Dorothy Mae Peace.

were taken to Lutheran Hospital where they were examined, given emergency room treatment and discharged.

Trusty's testimony was pretty much the same as that of Cousins except that when he was struck he "was walking down the sidewalk" a few feet behind Cousins.

Mrs. Wooden was then produced as a witness for appellants. Counsel told the court he was "calling * * * [her] as a hostile witness." Her testimony, in substance, is as follows.

The Chevrolet was new when she bought it in 1961. It was in good condition. The windshield wipers were "working that day" and it was equipped with "new snow tires." She left her house on Chauncey Avenue and drove to Liberty Heights Avenue and Hilton Road, a little over 2 miles, to pick up her friend, Olivia Neuman, and return home. The roads "were a little slippery" before she picked up Mrs. Neuman, "but not too noticeable." Whenever she stopped she noticed that when she would "start off * * * the wheels seemed to be spinning a little bit." After picking up Mrs. Neuman she turned left on Hilton Road and drove, "very slowly," 4 blocks to Longwood Street. She said Hilton Road "wasn't too slippery." As she was making the left turn from Hilton Road into Longwood Street "the car was doing a lot of skidding and sliding, whatever you call it, [although] she was driving very slowly." Just before Longwood Street reaches Carlisle Avenue it curves about 45 degrees to the right. As she proceeded "slowly" down Longwood Street "the car was slipping and sliding." When she approached the curve to the right the car "skidded all the way over into the left lane." She "tried to get it back over to the right lane" by turning the steering wheel but when she "got it back over into the right lane * * * it just skidded on to the sidewalk." As the car was "sliding onto the curb" she "happened to see * * * [appellants] up in front of the car." She didn't "remember feeling an impact," she didn't blow her horn and she was going "slowly."

Appellants next offered the hospital bills ($7.25 in each case) and the hospital's emergency room records. The court thereupon invited counsel to approach the bench and after a discussion which was not recorded Judge Russell said:

"Let the record show the plaintiff[s] [appellants]

* * * ha[ve] rested except for the testimony of Dr. Hughes. We will take a short recess."

After the recess Mrs. Wooden's motion for a directed verdict was granted.

As we have said so often, in cases like this we must consider the evidence and all logical and reasonable inferences deducible therefrom in a light most favorable to the appellants. *E.g., Finneran v. Wood,* 249 Md. 643, 241 A. 2d 579 (1968); *Raff v. Acme Markets, Inc.,* 247 Md. 591, 233 A. 2d 786 (1967). One may call an adverse party as a witness but if he does so he is bound by his adversary's testimony unless it is contradicted or discredited. Code, Art. 35 § 9 (1965 Repl. Vol.); *Wood v. Johnson,* 242 Md. 446, 453, 219 A. 2d 231 (1966); *Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886 (1958). It is at once apparent that without Mrs. Wooden's testimony there is absolutely no evidence to show how the accident happened. Neither Cousins nor Trusty saw the car before it struck them. There is no evidence that either of them heard it. The only other eyewitness, Olivia Neuman, was not called nor was the police officer who investigated the accident. Had appellants rested at this point the doctrine of *res ipsa loquitur* might well have come into play, in which case the defendant would have been obliged to go forward with the evidence. In *Hickory Transfer Co., Inc. v. Nezbed,* 202 Md. 253, 262-63, 96 A. 2d 241 (1953), Chief Judge Soboloff, for the Court, said:

> "When a vehicle leaves a highway and crashes into a building, or a pedestrian on a sidewalk, the injured party may show the happening of the event and rest. In lieu of direct proof of negligence he may rely on the inference of negligence to be deduced from all the circumstances. In such a case it is said 'the thing speaks for itself', or *res ipsa loquitur.* The burden of proof does not shift; but the defendant then has the obligation to go forward with his proof, which is sometimes called the risk of nonpersuasion.
>
> "When the plaintiff invokes this procedure, thus putting his reliance upon the inference of negligence springing from the event, it has been authoritatively held that it must not appear by his own evidence, or

the evidence adduced in his behalf, that causes for which the defendant was in no way responsible produced the injuries for which damages are sought. * * *.

"In this case the plaintiffs themselves proved the details of the happening, foregoing reliance on *res ipsa loquitur;* and, having undertaken to prove the details, they failed to show negligence on the part of the defendants. Indeed, they explained away the possible inference of negligence. Paradoxically, the plaintiffs proved too much and too little."

Mrs. Wooden's testimony has not been rebutted, contradicted or in any way discredited. It must stand therefore as the only explanation of how the accident happened. *Maszczenski v. Myers,* 212 Md. 346, 352, 129 A. 2d 109 (1957). We have not found in her testimony anything upon which, in our judgment, a finding of negligence could be erected. Her vehicle was in good working order. She had equipped it with "new snow tires." Just before the accident she had driven over 2 miles without incident. Other than the fact that she experienced some wheel spin on moving off there was nothing to indicate to her that she would not have been able to return to her house without endangering herself and others. She skidded in turning into Longwood Street and, of course, she skidded just before striking the appellants but she was driving "slowly." The mere fact that a vehicle skids or slides on a highway does not of itself constitute evidence of negligence. *Christ v. Wempe,* 219 Md. 627, 150 A. 2d 918 (1959). But skidding may be evidence of negligence *if it appears* that it was caused by a failure to take reasonable precautions to avoid it, when the conditions at the time make such a result probable in the absence of such precaution. *Smith v. Baltimore Transit Co.,* 214 Md. 560, 568, 136 A. 2d 386 (1957). The record reveals nothing about the condition of Longwood Street except that it was downgrade in the direction in which Mrs. Wooden was moving and that there was snow on its surface. Nor does it appear that the grade was so steep as to require more than ordinary caution. Certainly there was nothing about it to suggest that what happened was likely to happen in the absence of some precaution and there is

no evidence as to what the nature of that precaution might have been other than the use of snow tires and "driving slowly." But argue appellants, because Mrs. Wooden was unable to say precisely at what speed she came down Longwood Street, it should have been left to the jury to say whether her speed was excessive. We disagree. It is true, of course, that her car ran up over the curb and came to rest part way up an "embankment." This, however, might have happened at a "very slow" speed. Perhaps the most significant fact negating excessive speed is the minor nature of the injuries to appellants. In any event, the jury, had the case been submitted to them, would have been obliged to resort to pure speculation to find excessive speed. In *Fowler v. Smith,* 240 Md. 240, 246-47, 213 A. 2d 549 (1965), Chief Judge Prescott, for the Court, said:

> "* * * Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submismission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury. *Ford v. Bradford,* 213 Md. 534. Cf. *Bernardi v. Roedel,* 225 Md. 17, 21. However, the rule as above stated does not mean, as is illustrated by the adjudicated cases, that all cases where questions of alleged negligence are involved must be submitted to a jury. The words 'legally sufficient' have significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value."

Since we see no reason for disturbing the action of the trial judge, the judgment will be affirmed and the appellants will pay the costs.

*Judgment affirmed.*
*Appellants to pay the costs.*