LARSEN, ET UX. *v.* ROMEO, ET AL.

[No. 232, September Term, 1968.]

*Decided June 23, 1969.*

The cause was argued on April 9, 1969, before HAM-MOND, C. J., and MARBURY, McWILLIAMS, FINAN and SMITH, JJ. and reargued on April 28, 1969, before HAM-MOND, C. J., and MARBURY, BARNES, McWILLIAMS, FIN-AN, SINGLEY and SMITH, JJ.

*Earl H. Davis* (on both arguments) for appellants.

*Martin H. Freeman* (on both arguments), with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for appellees.

MARBURY, J., delivered the majority opinion of the Court. McWILLIAMS, J., dissents. Dissenting opinion filed August 7, 1969, at page 229, *infra.*

The appellants, Thomas Herman Larsen and his wife, Alice Rose Larsen, as plaintiffs below, sued the appellees, Dominick Anthony Romeo, Tidewater Express Lines, Inc. (Tidewater) and Hemingway Transport Inc. (Hemingway) in the Circuit Court for Prince George's County to recover damages, including loss of consortium, resulting from a rear-end collision of the defendant Romeo's tractor, which was hauling a trailer, with the Larsens' automobile. The lower court directed a verdict for Hemingway at the close of the plaintiffs' case on the basis that there was no proof that Romeo was its agent, and directed a verdict for Tidewater and Romeo at the close of all of the evidence. From judgments entered upon those verdicts, the plaintiffs have appealed.

We consider the evidence and all reasonable and permissible inferences to be drawn therefrom in the light most favorable to the appellants. *Finneran v. Wood,* 249 Md. 643, 241 A. 2d 579; *Mintzer v. Miller,* 249 Md. 506, 240 A. 2d 262; *Langville v. Glen Burnie Lines,* 233 Md. 181, 195 A. 2d 717.

On June 22, 1966, a clear and sunny day, Larsen was driving his automobile in a southerly direction on U. S. Route 1 (Baltimore Boulevard). At approximately 11:00 a.m., he brought his vehicle to a stop in the extreme right lane in obedience to a red traffic light at the intersection of Route 1 and Rhode Island Avenue. At that location Route 1 was a four lane highway, two lanes south and two lanes north with no median divider. Its surface was black macadam. The road was dry and almost level. While Larsen was waiting for the light to change, his automobile was struck with substantial force from the rear by a tractor owned and operated by the individual defendant Romeo, and was driven by the impact into a telephone pole located on the right side of the road. As a result of the collision, Mr. Larsen was knocked unconscious, and he was taken from the scene to the Leland Memorial Hospital located in Riverdale, Maryland. The left rear of the Larsen automobile sustained extensive damage, and the right front of Romeo's tractor was also damaged. At the time of the accident, the tractor bore the legend "Tidewater Express Lines, Inc." as well as Tidewater's I.C.C. permit number, and it was hauling a 15,000 pound load of freight in a trailer which was marked with the name "Hemingway." Fifteen thousand pounds was substantially less weight than the 65,000 pounds that the defendant Romeo was authorized to carry.

As their first witness, the appellants called Officer Richard Tague of the Prince George's County Police. The officer testified that he did not witness the accident but arrived at the scene "more or less coincidentally." During the course of his investigation he noticed skid marks left by the rig for a length of 48 feet measured from the rear wheels of the tractor. However, because of the dirt, debris and glass, he could not tell whether the skid marks were made before or after the impact. When the officer was asked by the appellants' counsel what Romeo told him about the accident, Tague responded:

"He stated that he was traveling south on Baltimore Boulevard in the right lane, that he

noticed the light change and he started applying his brakes, too, when he spotted Mr. Larsen's vehicle. Then the second time he applied his brakes, he didn't have no brakes and which he veered his vehicle to the left to avoid the collision but struck the right, the left rear of Mr. Larsen's vehicle with his right front."

After eliciting medical testimony not pertinent on this appeal, Larsen testified on his own behalf. He stated that prior to being struck he had no warning, such as the sounding of a horn, of any impending danger nor did he hear any screeching of brakes. Since he was hit unexpectedly from the rear and knocked unconscious, he was unable to identify the driver of the tractor.

The defendant, Dominick Romeo, was called as an adverse witness by the appellants. Romeo testified that he was the owner and operator of the tractor involved in the collision and further testified as to his relationship to the corporate defendants as bearing on the question of agency between them and himself. On direct examination Romeo was asked, "How close to the rear of the Larsen vehicle were you when you first applied your brakes?" His response was:

"Well, I wouldn't know. That is roughly two years ago. I wouldn't know exactly the distance, but is wasn't very far, because I tried to—well, I put my foot on the brake, tried to stop, and the first time it eased up and then I tried again and I didn't have no air. I didn't have no air at all. And I tried to avoid the accident and I turned to the left and the right front of my tractor hit the back of Mr. Larsen's car."

No objection or motion to strike this testimony was made by the appellants' counsel. For the second time, the plaintiffs had introduced evidence that the accident was caused by a sudden and unexpected failure of the brakes on the Romeo vehicle. However, in order to obtain a responsive

answer from Romeo, appellants' counsel read him a portion of his deposition in which Romeo stated: "I saw him a good piece ahead but I was about, I would say, 25 feet behind him when I tried to apply the brakes."

On cross examination, Romeo explained that the tractor-trailer he was driving on the day in question had two brake systems, both of the air type. One air hose was used for service, and the other was used as an emergency line. He testified that on the morning of June 22, 1966, he had inspected the hoses to see that they were properly connected to the trailer. He indicated that from the time he looked at the brakes and hoses, hooked up the trailer, and operated the rig up until the accident, his brakes were operating properly. Prior to the accident he had stopped at two or three traffic signals and his brakes were functioning properly at those times. He indicated that as he approached appellants' car he was in low gear and traveling at a speed of approximately 15-20 miles per hour. Further, he explained that when he had earlier stated he was 25 feet behind Mr. Larsen's car when he applied the brakes that he meant the second time he applied his brakes, and that 25 feet was just his guess of the distance. He was positive, however, that when he applied the brakes for the second time that there was enough time to come to a complete stop without hitting the Larsen vehicle if the brakes hadn't failed. When asked when his brakes had last had an I.C.C. inspection, he responded a week or two prior to the accident. A buzzer was supposed to indicate by sound that the brake pressure was low but Romeo heard no buzzer prior to the accident. He maintained that even though he was hard of hearing, with the help of his hearing aid he would have heard the buzzer had it sounded. He did testify that the buzzer sounded after he started the engine subsequent to the accident. Finally, Romeo stated that after the accident, either he or a mechanic had taken a piece of hose off his tractor, but that he had thrown it away. On this testimony, the lower court granted directed verdicts in favor of all of the defendants, and this Court concludes that its rulings were correct.

It is axiomatic that in an action for injuries allegedly resulting from a defendant's negligence, the burden is upon the plaintiff to establish that the defendant was negligent and that such negligence was a proximate cause of the injuries. Had the appellants rested after establishing the accident was caused by Romeo, the doctrine of res ipsa loquitur may have come into play. However, the doctrine, which would have obliged the defendants to go forward with the evidence, was not available to them since Romeo, as their witness, attributed the accident to a sudden brake failure. In Maryland one may call an adverse party as a witness. Code (1965 Repl. Vol.), Article 35, Section 9. However, if one does so, he is bound by his adversary's testimony unless it is contradicted or discredited. *Trusty v. Wooden,* 251 Md. 294, 247 A. 2d 382; *Wood v. Johnson,* 242 Md. 446, 219 A. 2d 231; *Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886. As this Court stated in *Trusty v. Wooden, supra,* quoting *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 96 A. 2d 241:

> " 'When the plaintiff invokes this procedure [res ipsa loquitur], thus putting his reliance upon the inference of negligence springing from the event, it has been authoritatively held that it must not appear by his own evidence, or the evidence adduced in his behalf, that causes for which the defendant was in no way responsible produced the injuries for which damages are sought. . . .
>
> " 'In this case the plaintiffs themselves proved the details of the happening, foregoing reliance on *res ipso loquitur;* and, having undertaken to prove the details, they failed to show negligence on the part of the defendants. Indeed, they explained away the possible inference of negligence. Paradoxically, the plaintiffs proved too much and too little.' " *Id.* at 297-98, 247 A. 2d at 384.

See also *Johnson v. Jackson,* 245 Md. 589 at 591, 226 A. 2d 883 at 885.

Further, even if we assume, without deciding, that there was some evidence to support a possibility of negligence on Romeo's part, the appellants could not have legally escaped a directed verdict. The appellants' first witness, Officer Tague, testified that after the accident Romeo told him that his brakes had failed. Also the appellants' witness, Romeo, testified that prior to the collision he had an unexpected and sudden brake failure. In *Langville v. Glen Burnie Lines*, 233 Md. 181, 185-86, 195 A. 2d 717, 719-20, Judge Prescott, later Chief Judge, speaking for this Court stated the test for directed verdicts in brake failure cases:

"At this point, we are confronted by the well-established rule of evidence that the burden mentioned above is not met by proof adduced by the plaintiff to the effect that defendant's negligence may have caused the injuries, or even that it probably did cause them, if it also appears from plaintiff's evidence that the injuries may have resulted from some other cause for which the defendant is not responsible. The rule was stated by Chief Judge McSherry for the Court in *Strasburger v. Vogel*, 103 Md. 85, 91, 63 A. 202, thus: 'But when the plaintiff himself shows that the injury complained of must have resulted *either* from the negligence of the defendant *or* from an independent cause for the existence of which the defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury * * *.' See also *Moore v. American Stores Co.*, 169 Md. 541, 182 A. 436; *Wasserman v. Hutzler Co.*, 219 Md. 310, 149 A. 2d 1; *Joffre v. Canada Dry, Inc.*, 222 Md. 1, 158 A. 2d 631, and cases referred to in the opinions. Compare *Great Atlantic, etc., Co. v. Adams*, 213 Md. 521, 132 A. 2d 484.

"We think the evidence produced by the plain-

tiffs in the instant case falls directly within the pattern of the above rule, and precludes their recovery against the defendant. It is obvious that the defendant could not properly be held responsible for a sudden and unforeseeable brake failure such as that proved by the plaintiffs, and which they showed could have caused the injuries; therefore it was incumbent upon them to eliminate the brake failure as the efficient and proximate cause of the injuries complained of, before they could recover for the negligence of the appellee's driver, which we have had to assume. This, they failed to do; consequently, the action of the trial judge in taking the case from the jury was correct."

In order to avoid the rule established in *Langville,* the appellants urge that they should not be bound by the testimony of the adverse witness Romeo, and argue that his testimony contained self-contradictions and was contradicted by circumstances and physical evidence. They urge that Romeo's testimony was contradicted: (1) by his deposition statement that he had not applied his brakes until his vehicle was 25 feet from the Larsen car, (2) by the 48 feet of skid marks left by the Romeo rig, and (3) by Romeo's testimony that he had taken a piece of air hose from the tractor which he had later thrown away. We can not agree with these contentions.

Turning to the first point, Romeo also testified that he applied his brakes for a *second* time at a distance of 25 feet from the Larsen vehicle. Further, according to his testimony his estimate of 25 feet was a mere guess on his part. However, he was positive that he could have stopped without hitting the Larsen vehicle had his brakes not failed. Second, Officer Tague testified that although the marks were made by Romeo's tractor, it was impossible to state whether they were made before or after the collision. While there might be a case where skid marks made by defendant's car could amount to proof

of negligence, in this particular case, the fact that there were 48 feet of skid marks lacks probative value and does not rise above speculation and conjecture. See *Martin Furniture v. Yost*, 247 Md. 42, 55, 230 A. 2d 338, 345, citing *Finney v. Frevel*, 183 Md. 355, 360, 37 A. 2d 923, 926:

> "Reliance upon testimony alone of marks upon the road, even though clearly shown to be made by the defendant's car, to establish negligence has never been favored by this Court."

Finally, we turn to the missing air hose. As a general rule, an inference arises from the suppression or destruction of evidence by a litigant that such evidence would be unfavorable to his case. However, this inference does not amount to substantive proof and can not take the place of proof of a fact necessary to the other party's case. *Maszczenski v. Myers*, 212 Md. 346, 129 A. 2d 109. Romeo testified that he or a mechanic took a piece of hose off his tractor, that he showed the mechanic that it had a leak, and then threw the hose away. Assuming, without deciding, that Romeo destroyed this piece of hose, the only inference that may be drawn is that that particular piece of hose, which may or may not have been part of the brake system, was not defective. Such an inference does not negate Romeo's testimony that his brakes failed.

Appellants also place reliance upon *Mintzer v. Miller*, 249 Md. 506, 240 A. 2d 262. In that brake failure case, this Court distinguished *Langville* and held that the lower court erred in directing a verdict for the defendant. However, the case at bar is distinguishable from *Mintzer* where Judge Barnes stated for this Court:

> "In the present case, the plaintiffs' testimony indicated that there was a screeching of the brakes of the defendant's automobile just prior to the collision and that the defendant immediately thereafter stated that he was sorry that his brakes gave way or went out. It is the de-

fendant who claimed that there was a failure of his brakes, but he did not state and the evidence of the plaintiffs does not show that there was a proper inspection and a sudden failure without warning." 249 Md. at 508, 240 A. 2d at 264.

In the instant case, the uncontradicted and uncontroverted evidence of the plaintiffs established that there had been recent inspection and tests of the brakes, and that the accident could have been caused by an unexpected and sudden failure of the brakes without warning.

For the above reasons we conclude that the lower court correctly refused to submit for the jury's consideration the question of whether Romeo was negligent. Since recovery against Hemingway and Tidewater would have to be predicated upon a finding of such negligence, the court also correctly directed verdicts in their favor.

> *Judgments affirmed. Costs to be paid by the appellants.*

McWILLIAMS, J., dissenting:

As I see it the testimony produced by the plaintiff does not call for the application of *Langville v. Glen Burnie Coach Lines, Inc.,* 233 Md. 181, 185-86 (1963). The majority relies primarily upon the testimony of Romeo, whom the plaintiff called as an adverse witness, Code, Art. 35, § 9 (1965 Repl. Vol.), to support its determination that the plaintiff by his own evidence had suggested two possible theories for the cause of the accident, one of which would absolve the defendant of liability. To a lesser degree the majority relies on the testimony of Officer Tague. It is true that a party calling an adverse party to testify is generally bound by his testimony. *Trusty v. Wooden,* 251 Md. 294, 297-99 (1968). But this does not mean that a party is bound by each and every statement, for the testimony may be contradicted or discredited by circumstances or other testimony. A jury is not bound to accept the testimony of a witness as true if

it contains improbabilities, or if there are reasonable grounds for concluding that it is erroneous. *P. Flanigan & Sons, Inc. v. Childs,* 251 Md. 646 (1968) ; *Harding v. Alpha Van Lines, Inc.,* 224 Md. 596 (1961) ; *Proctor Electric Co. v. Zink,* 217 Md. 22, 32-34 (1958).

I think Romeo's testimony that the accident was caused by a sudden brake failure was inconsistent, contradictory and sufficiently discredited to free the plaintiff of any binding effect it might otherwise have. Romeo, it is true, testified that he could have stopped if his brakes had not failed. But this statement should not bind the plaintiff in light of the rest of his testimony and especially since it was merely an opinion brought out in cross-examination. In *Proctor Electric Co. v. Zink, supra,* we said that "where the witness was adverse and his crucial evidence relied upon by the appellees was opinion testimony brought out in cross-examination, it was proper for the jury to say whether or not the circumstances or the improbability of his testimony showed that he was mistaken in some of his statements or opinions." *See also Williams v. Wheeler,* 252 Md. 75, 80 (1969). It should be noted that Romeo had testified on direct examination that he was traveling "at least" 15 to 20 miles an hour when he approached the Larsen vehicle. He said he did not know exactly the distance between his vehicle and Larsen's when he first applied the brakes, "but it wasn't very far." In his deposition he had stated that the distance was 25 feet. On cross-examination he said "it happened so fast I couldn't judge the distance. I was pretty close to him when I applied the brakes. The second time." Then in response to a question by his *own* counsel regarding the 25 foot distance, he said it probably was just a guess. In these circumstances Romeo's statement that he could have stopped in time to avoid the collision was mere speculation, unsupported by any facts in evidence. In effect, Romeo was saying that he could have stopped his tractor-trailer carrying a load of about 15,000 pounds and traveling "at least" 15 to 20

miles an hour within 25 feet, a determination that should rest with the jury. In *Martin Furniture Corp. v. Yost,* 247 Md. 42, 53-55 (1967), we rejected a similar estimate of stopping ability, stating that the trial judge "attributed more significance to * * * [the driver's] estimate of his ability to stop than is justified."

There are, moreover, other inconsistencies in Romeo's testimony. Although Romeo alleged that prior to the collision he had an unexpected and sudden brake failure, there were 48 feet of skid marks. The majority dismiss this evidence because Officer Tague testified it was impossible to determine whether they were made before or after the collision. But this ignores Romeo's own statement in response to the question, "Did you use your emergency brake *before* this collision?" (Emphasis added.) He answered, "I used the hand throttle at the same time that I put my foot on the brake, at the same time, trying to stop the whole unit. *That is what made it skid."* (Emphasis added.) Moreover, the evidence of skid marks need not prove negligence to have probative value. Here they were evidence to contradict Romeo's statement that he had no brakes. His testimony is also discredited by his statement that the pressure buzzer, which is designed to warn of failing air pressure, did not sound before the accident; yet it did work, upon testing, after the accident. Finally, Romeo's disposal of the "ruptured" air hose is a circumstance that ought to be considered in determining whether a jury would have reasonable grounds to disregard his testimony.

I think, in the circumstances, that the evidence, let alone the reasonable inferences deducible therefrom, was sufficient to entitle the jury to find that Romeo's explanation as to how the accident occurred was discredited, at least to the extent that the jury could properly find either that he did not experience a brake failure, or if he did, that it was not the proximate cause of the collision. *Wood v. Johnson,* 242 Md. 446, 452-53 (1966). I would reverse and remand for a new trial.