FRIES *v.* BRAKENRIDGE, ET AL.

[No. 198, September Term, 1969.]

*Decided February 9, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*Thomas J. Kenney,* with whom were *Eugene A. Friedman* and *Burke, Gerber & Wilen* on the brief, for appellant.

*Frederick J. Green, Jr.,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for Charles P. Howard, Jr., one of the appellees. *Robert K. Nead* for Thomas Orvil Dando, another appellee. Submitted on brief by *David D. Patton* for Edward Kellogg Brakenridge, other appellee.

FINAN, J., delivered the opinion of the Court.

This appeal which arises out of a chain automobile collision affords a good example of how not to start a day at the races.

On Saturday, April 3, 1965, at approximately 12:30 P.M., Mrs. Charlene L. Fries, appellant and plaintiff below, of Springfield, Virginia, a 42 year old housewife, was operating a Karmann Ghia automobile in a northerly direction on the Baltimore-Washington Expressway. It was a sunny day and the roadway was dry. She was on her way to Laurel race track for a day at the races. At a distance of approximately one-quarter of a mile from the intersection of the Baltimore-Washington Expressway with Powder Mill Road she was driving behind an automobile owned and operated by Thomas Orvil Dando, one of the appellees and one of the defendants below. Both vehicles were proceeding in the fast lane, but because something was glaring in her eyes, she proceeded to pass the Dando vehicle. His car did not move to the slow lane and Mrs. Fries decided to pass him on the right hand side. Before passing she observed her speed to be 45 miles per hour. At this moment Dando's vehicle appeared to be slowing down. Dando had maintained approximately 6 or 7 car length's distance from the car immediately in front of him which was being driven by Charles P. Howard, Jr., an appellee and one of the defendants below. Mrs. Fries passed Dando, and upon observing Dando's car in her side-view mirror and when she felt that it was safe to do so, she reentered the left lane. She was approximately 25 to 30 feet in front of Dando. During this time Dando maintained the same distance between his vehicle and the Howard vehicle and Mrs. Fries was halfway between both vehicles. After reentering the fast lane she had to apply her brakes "almost immediately", according to her, or in terms of seconds "three seconds, I'd say." She states that she did so because she had heard the sound of braking in front of her, and then she heard a light tap or colliding sound in front of her. At that moment she maintains that she was completely in the left lane. The closest vehicle immediately in front of her was four or five car lengths away. This was the beginning of a chain collision which was triggered by the abrupt stopping or deceleration of a ve-

hicle, which remains unidentified, which was in front of the vehicle operated by Edward K. Brakenridge, an appellee and one of the defendants below. Brakenridge had slammed on his brakes to avoid hitting the car in front of him. He had been traveling at approximately 50 miles per hour. Upon applying his brakes, Brakenridge was struck in the rear by Howard's vehicle and shoved a few feet forward. Two or three seconds later, Brakenridge heard and felt another impact, this one being very slight. Howard was required to brake his car because of the sudden stopping by Brakenridge. Mrs. Fries, having observed the collision in front of her, brought her car to a rapid stop. She maintains that she stopped about 12 to 14 inches from the Howard vehicle in front of her. Her engine went out and she was looking down at the red light on her dashboard when she was struck from the rear by the vehicle operated by Dando. The force of this impact shoved her into Howard's vehicle. Immediately after the accident, Dando came over to her and stated that he tried to miss her but could not.

Actually, there was a disagreement among the parties as to the sequence of impacts. However, since this case was decided below on the basis of a directed verdict for all of the defendants, the statement of facts which we have adopted for the purpose of this opinion is Mrs. Fries' version, the one most favorable to her. *Trusty v. Wooden,* 251 Md. 294, 297, 247 A. 2d 382 (1968), and *Trionfo v. Hellman,* 250 Md. 12, 15, 241 A. 2d 554 (1968).

Mrs. Fries eventually filed suit in the Baltimore City Court for personal injuries and property damage against Brakenridge, Howard and Dando. A trial on the merits was held May 5, through May 7, 1969, and after the jury had heard all of the testimony, Judge Harry A. Cole granted the motions of the defendants for a directed verdict on the basis that Mrs. Fries was guilty of contributory negligence as a matter of law and was barred from recovery. It is from the granting of the directed verdicts that this appeal was taken.

In the Baltimore City Court, there were also consoli-

dated with Mrs. Fries' suit against Dando, Brakenridge and Howard, appeals from the Peoples Court of Baltimore City. In one appeal the judgment in the Peoples Court had been rendered in favor of Mrs. Fries and Brakenridge, as defendants, in which Howard had been the plaintiff; and in another appeal the judgment in the Peoples Court had been rendered for Mrs. Fries and Dando, as defendants, in which Brakenridge had been the plaintiff. These appeals were disposed of in the Baltimore City Court by Judge Cole directing a verdict in favor of Brakenridge against Mrs. Fries, for property damage, in the amount of $188.75. Implicit in this directed verdict is a finding of negligence on the part of Mrs. Fries and the absence of negligence on the part of Brakenridge, insofar as any redress between these two parties may be concerned. However, this particular judgment is not before us on appeal. The Baltimore City Court was a court of last resort for this appeal from the Peoples Court of Baltimore City. Maryland Code (1968 Repl. Vol.), Art. 5, § 1. We would also note that Judge Cole's directing the verdict for the three defendants in Mrs. Fries' personal injury case was consistent with his action in directing the verdict in favor of Brakenridge against her in the appeals from the Peoples Court.

The joint record extract filed by the parties would indicate that Judge Cole also found an absence of any primary negligence on the part of the respective defendants; however, when assigning his reasons for granting the verdict, in his remarks to the jury, he based it solely on the grounds of contributory negligence and we will so view it in this opinion. We would also quickly add, as did Judge Cole, "This is not to suggest that she met her burden of proof in regard to primary negligence as to each one of the defendants."

We think that we must view the evidence in this case against the background of Maryland Code (1967 Repl. Vol.), Art. 66½, § 223 (a) which reads as follows:

"Single lanes — A vehicle shall be driven as

nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

Mrs. Fries' testimony, that she changed from the slow lane into the fast lane directly in front of the defendant Dando and almost immediately had to apply her brakes because of the traffic ahead abruptly stopping, brings her within the teeth of the statute. The evidence shows that she was traveling about 45 miles per hour when she started to pass Dando who was traveling about 50 miles per hour in a steady stream of traffic. As a part of her move to pass Dando and change from the slow lane to the fast lane she had to accelerate. It was under these conditions of congestion and speed that Mrs. Fries sandwiched her Karmann Ghia into the space of 6 or 7 car lengths that Dando had been maintaining between his vehicle and Howard's vehicle in front of him. When intruding into this lane of fast moving cars she should have taken into account, as a duty under ordinary care, that others would be affected by her movements and would have to adjust accordingly, and that she herself might have to react quickly to conform to the taut flow of vehicles streaming along the Parkway that allowed little or no margin of safety in their intervals. This she failed to do.

The following testimony elicited from Mrs. Fries on cross-examination reveals the quality of her actions:

"Q. As you passed him is it not true you had to speed up to pass him? A. Yes, I am sure I did.

Q. As you speeded up to pass him did you not cut back in front of him into the left lane again? A. I had ample space. I don't call it cutting in front of him. I pulled in front of him.

Q. I will ask you this way. As you passed him did you change from the right lane, which is a

slow lane, back into the fast lane directly in front of him? A. Absolutely.

Q. When you changed back in front of him is it not true at the same time immediately on going in you saw cars ahead of you coming to a sudden stop and swerving in the highway? A. I saw cars, yes.

Q. Did you not see them swerve? A. I heard brakes and then I saw the cars in front of the two which I have drawn a picture of. There was other cars in front that did swerve.

Q. You did see cars immediately in front of you swerving, is that correct? A. Yes."

Giving Mrs. Fries the benefit of all favorable inferences to be deduced from the evidence, we cannot help but agree with the lower court that her own testimony establishes that she attempted to change lanes at a time when a person exercising reasonable care for their own safety would not have done so. In *Wallace v. Fowler,* 183 Md. 97, 100, 36 A. 2d 691 (1944) our predecessors stated, "It would be negligent aside from the statute, for a driver not to do what the statute says must be done." See also *Callahan v. Reynolds,* 254 Md. 625, 630, 255 A. 2d 70 (1969). Cf. *Traish v. Hasan,* 245 Md. 489, 494, 226 A. 2d 573 (1967); *Jones v. Baltimore Transit Co.,* 211 Md. 423, 429, 127 A. 2d 649 (1956). We conclude that the injuries which the appellant sustained in the collision were contributed to by her own negligence.

*Judgments affirmed, appellant*
*to pay costs.*