ROBERTS *v.* CAVE, ET AL.

[No. 291, September Term, 1969.]

*Decided April 8, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Robert E. Cahill,* with whom were *Melnicove, Asch, Greenberg & Kaufman* on the brief, for appellant.

*Thomas Ward* for appellee Rosezena Pauline Cave.

*Robert J. Thieblot,* with whom were *Allen, Thieblot & Alexander, Francis B. Burch, Attorney General,* and *William E. Brannan, Assistant Attorney General,* on the brief, for appellee Unsatisfied Claim and Judgment Fund Board.

BARNES, J., delivered the opinion of the Court.

At 9:00 p.m. on Friday, April 21, 1967, Richard Augusta Burgess (Burgess) met his pre-arranged date, Rosezena Pauline Cave (Miss Cave), at a bar in the Pimlico section of Baltimore City. Each had a beer in the bar and then they left together to go somewhere where they could dance and play shuffleboard. Traveling in a panel truck owned by Burgess' employer, Samuel Angelo Brocato (Brocato), the couple arrived at a second bar about an hour later. There, they each had another beer and danced for "an hour or so." Then they left in the truck and went to a third bar, where each had another beer and played shuffleboard. At approximately 1:30 a.m. on April 22, they left that bar and proceeded on their way to a Chinese restaurant to eat. During the trip to the restaurant the couple was engaged in a conversation and from time to time would look at each other while talking. Unfortunately, their trip came to a premature finish when the panel truck being driven by Burgess struck the rear of a double-parked automobile in the 2100 block of Mount Royal Terrace at about 2:00 a.m. Miss Cave described what took place in the truck just prior to the accident as follows:

> "* * * [H]e [Burgess] was talking to me, and he would take — looking at me from time to time, and we—right before we saw the car, he was looking at me and I was talking to him and

looking at him and we both turned around about the same time and the car — we saw it right ahead of us, but the car—it was too close up on top of the car before either one of us saw it."

In August 1967 Miss Cave brought suit against Burgess and Lamar Roberts, the owner of the double-parked car, in the Baltimore City Court for permanent injuries and other damages she sustained in the accident, allegedly due to the negligence of the defendants. Miss Cave was unable to locate Burgess for service of process and in July 1968 the lower court granted her petition under Article 66½, Section 167A of the Annotated Code of Maryland (1967 Replacement Volume) to join in and make a party defendant the Unsatisfied Claim and Judgment Fund Board (Fund). An Amended Declaration naming the Fund as a defendant was then filed and, thereafter, in October 1968 a second Amended Declaration was filed naming Brocato, the owner of the truck operated by Burgess, as an additional defendant in the case.

The case was tried before a jury in June 1969. At the close of the Plaintiff Cave's case, Roberts and the Fund each filed a Motion for a Directed Verdict. These motions were denied then and upon their renewal at the conclusion of the entire case. However, the lower court (Cullen, J.) did direct a verdict in favor of Brocato upon his Motion at the close of the evidence. The case was then submitted to the jury and a verdict was returned in favor of Miss Cave for $15,500 against both Roberts and the Fund. Roberts' subsequent Motion for Judgment N.O.V. or in the alternative for a New Trial was denied and the judgment was made absolute on July 3, 1969. Roberts alone has taken a timely appeal to this Court from the final judgment.

Roberts' appeal to this Court asking us to reverse the action of the trial court is based upon two grounds (1) that Judge Cullen should have granted Roberts' Motion for a Directed Verdict at the close of Miss Cave's case or at the close of all the evidence; and, (2) that Judge

Cullen made various errors in his instructions to the jury on points of negligence law. Since we are of the opinion that Roberts was entitled to a directed verdict at the close of Plaintiff Cave's case, and we so hold for the reasons which follow, we need not reach and consider the alleged errors in the lower court's instructions to the jury.

The basis of Roberts' Motion for Directed Verdict at the close of the evidence offered by the Plaintiff Cave included the following grounds:

"1. That the uncontradicted and conclusive evidence offered by the Plaintiff establishes that the Defendant Lamar Roberts did not leave his vehicle in a double-parked position prior to the accident and said evidence rebuts the *prima facie* presumption that the Defendant Lamar Roberts, or his agent, servant or employee did so leave his vehicle.

"2. That there is no evidence of negligence on his part which was a direct and proximate cause of the Plaintiff's injuries."

It is upon these two stated grounds which we think Judge Cullen was required to direct a verdict in favor of Roberts upon his motion.

As this Court has often stated, "In deciding whether a defendant's motion for a directed verdict or for a judgment *n.o.v.* should have been granted, we shall, as we must, consider the evidence together with all reasonable and legitimate inferences which may be deduced therefrom, in the light most favorable to the plaintiff." *Stoskin v. Prensky,* 256 Md. 707, 262 A. 2d 48 (1970). Accordingly, for the purposes of the opinion, we shall so consider the evidence introduced by Miss Cave with regard to the grounds of Roberts' motion.

It is undisputed by the parties that as the trial began Miss Cave had the benefit of a rebuttable presumption that the car had been double-parked by Roberts or his agent acting for him, since Roberts has never denied ownership of this car. *Fowser Fast Freight v. Simmont,*

196 Md. 584, 588, 78 A. 2d 178, 179 (1951). There is also the uncontradicted testimony of the Plaintiff Cave, corroborated by the testimony of the investigating police officer, that Roberts' car was double-parked without lighted taillights at the time of the accident. We agree with Roberts' counsel who concedes that this evidence of a negligently double-parked automobile, when coupled with the presumption that this had been done by Roberts or someone on his behalf, constituted a prima facie case for Miss Cave against Roberts. The problem in this case arises, however, because counsel for Miss Cave apparently chose not to rely on this presumption of Roberts' negligence. Rather, the Plaintiff Cave elected to call the investigating police officer and the Defendant Roberts as her witnesses to give testimony as part of her case. In so doing, Miss Cave elicited testimony from her own witnesses which directly conflicted with and rebutted the presumption of Roberts' responsibility for the double-parked automobile. When called by Cave to take the witness stand, the investigating officer read from his official records of the accident a notation of an unsigned oral statement made by Roberts to another interviewing officer over the telephone several hours after the accident.

> "(The Witness) Owner stated his vehicle was parked at the curb about 11:00 p.m., on April 21st, 1967 and—(west curb of Mt. Royal Terrace), and he was visiting a friend around the corner."

When Roberts was called as an adverse witness by Miss Cave's counsel he testified in direct examination:

> "Q. And on that night in question, where were you when you last saw your car? A. When I last saw it, I had parked the car on the corner of Newington Avenue, that is Newington and Park."

> \* \* \*

> "Q. And when you say you last saw it, what

time was that? A. That was approximately 11:30 or 12:30, something like that.

"Q. Did you take the car to that location at Newington Avenue and Park Avenue? A. That is where I parked it, yes, sir.

"Q. And which street was it on, Park or Newington? A. On Newington.

"Q. And what hundred block, if you know? A. I don't know the block number that is on Newington.

"Q. Is that the block between Mt. Royal Terrace and Park Avenue? A. Yes, sir.

"Q. In other words, it was just around the corner from the 2100 block of Mt. Royal Terrace? A. It is a whole block away.

"Q. A whole block away? A. Right.

"Q. Now, when you got out of the car, did you lock it? A. I locked all the doors with the exception of the driver's doors, you know, by the steering wheel. It wouldn't lock.

"Q. Did you remove the keys from the ignition? A. I did.

"Q. And where did you go? A. I went to 2111 Park Avenue."

\* \* \*

"Q. Did he—when you left your car, was it double parked or against the curb? A. No, it was against the curb, right on the corner.

"(The Court) It where — what is the last thing?

"(The Witness) On the corner of Newington and Park Avenue.

"By Mr. Ward:

"Q. How did your car get around the corner?

"(Mr. Cahill) Objection.

"(The Court) If he knows. Do you know how it got around the corner? Overruled.

"(The Witness) I don't know.

588

"By Mr. Ward:

"Q. Did you give anyone permission to use or move your car? A. No, sir.

"Q. Did you give your keys to anyone? A. No, sir."

It is this direct testimony of the investigating officer and Roberts, introduced into evidence by the Plaintiff Cave, which this Court finds to be in direct conflict with the initial presumption that Roberts or someone in his behalf had double-parked the car on Mount Royal Terrace. Once having rebutted this presumption by the evidence of her own witnesses, Miss Cave could no longer rest her case on it. We find the presumption in the present case analogous to the presumption established under the doctrine of *res ipsa loquitur* and we find that the language of Chief Judge Sobeloff, speaking for the Court, in *Hickory Transfer Co., Inc. v. Nezbed,* 202 Md. 253, 263, 96 A. 2d 241, 245 (1953) to be applicable here:

"When the plaintiff invokes this procedure [*res ipsa loquitur*], thus putting his reliance upon the inference of negligence springing from the event, it has been authoritatively held that it must not appear by his own evidence, or the evidence adduced in his behalf, that causes for which the defendant was in no way responsible produced the injuries for which damages are sought. Such was the holding of this court, speaking through Chief Judge McSherry, in *Strasburger v. Vogel,* 103 Md. 85, 63 A. 202. This is still the law.

"In this case the plaintiffs themselves proved the details of the happening, foregoing reliance on *res ipsa loquitur;* and, having undertaken to prove the details, they failed to show negligence on the part of the defendants. Indeed, they explained away the possible inference of negligence. Paradoxically, the plaintiffs proved too much and too little."

See also *Larsen v. Romeo,* 254 Md. 220, 255 A. 2d 387 (1969).

In the instant case, it is clear that the evidence adduced on behalf of Miss Cave examined the details of Roberts' conduct, yet failed to show any negligent conduct on his part. In fact, the evidence adduced on behalf of Miss Cave was to the effect that prior to the accident Roberts parked his car next to the curb, turned the ignition off, kept the keys on his person, and gave no one permission to move the car from its properly parked position while he visited a friend. Admittedly, most of this evidence came from the adverse witness, Roberts, but this Court has recently held that:

> "In the absence of some real doubt being cast upon the testimony in question, whether by the testimony of other witnesses and inconsistent circumstances (*Wood v. Johnson, supra* and *Lehmann v. Johnson, supra*) or because the adverse witness' testimony was vague, indefinite and internally contradictory (*Plitt v. Greenberg, supra*) or because the matter testified to was opinion testimony brought out by his own counsel on cross-examination and was contradicted by other circumstantial evidence (*Proctor Electric Co. v. Zink, supra*), it is proper to hold as a matter of law that the party who called the opposing party as his own witness is bound by his testimony."
>
> *Williams v. Wheeler,* 252 Md. 75, 80, 249 A. 2d 104, 107 (1969).

Counsel for Miss Cave suggests that some real doubt was cast upon Roberts' testimony by the testimony of the investigating officer, which allegedly contradicted the Defendant's testimony on several points. It is argued that the notation (already quoted above) of another officer interviewing Roberts over the telephone, read into evidence by the investigating officer, indicated that Roberts had earlier stated that he parked his car at the "west

curb of Mt. Royal Terrace," not the curb of Newington Avenue as he testified to at trial. Also, Miss Cave contends that the investigating officer stated that when he arrived on the scene of the accident he found the driver's door of Roberts' car locked, while Roberts had testified that he had not locked this door because the lock was broken. We have thoroughly examined this testimony of the investigating officer in the light most favorable to Miss Cave, and we can reach but one conclusion, that there is nothing therein which casts a reasonable doubt upon the unequivocal testimony of Roberts. Alone, the vague notation of what Roberts supposedly said in the telephone interview, unsupported and unexplained by the officer who made it, has no force to overcome a flat denial of such a statement by Roberts himself. Even that notation placed the car at the curb and not double parked. The investigating police officer's testimony that he found the driver's door locked also lacks probative force in casting doubt on the veracity of Roberts' testimony. The officer admitted in his testimony that the driver's door had been damaged and, in fact, was "lodged and jammed tight" as a result of the impact of the accident. At most, this testimony of the officer could only leave the jury to *speculate* as to whether the door was in fact locked, and if it was locked, then how it became so.

In conclusion, we find that Miss Cave elected not to rely on the initial presumption that Roberts was responsible for the negligently parked automobile, and, in fact, her case explained away this presumption while attempting to prove Roberts' negligence by direct proof. Even if we were to agree with Miss Cave to the extent that her case creates the possibility that the injury complained of resulted from the negligence of Roberts, there is in addition the proved probability of an independent cause for which the Defendant is in no way responsible. Having undertaken the burden of proving Roberts' negligence, it was incumbent on Miss Cave to offer evidence eliminating the possible independent proximate cause of the accident. This, Miss Cave wholly failed to do; conse-

quently, we hold the trial judge was in error in submitting the case against Roberts to the jury. See *Larsen v. Romeo*, 254 Md. 220, 225-227, 255 A. 2d 387, 390 (1969) and cases therein cited.

*Judgment reversed, the appellees to pay the costs.*