**Robert T. COLLINS and Gladys Collins, Defendants Below, Appellants,**

v.

**Philip J. THROCKMORTON, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 11, 1980.

Decided Dec. 5, 1980.

**148**

James F. Kipp (Argued) of Trzuskowski, Kipp, Kelleher & Pearce, P. A., Wilmington, for defendants below, appellants.

Jerome O. Herlihy (Argued) of Herlihy & Herlihy, Wilmington, for plaintiff below, appellee.

Before DUFFY, McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

The defendants below appeal from a money judgment for the plaintiff entered by the Superior Court after a non-jury trial. The basic facts underlying the controversy are as follows:

Plaintiff Philip Throckmorton and defendant Robert Collins were the sole stockholders (as well as the officers and directors) in Central Ceilings, Inc. (hereinafter referred to as "Central"). On March 26, 1973, Central borrowed $10,000. from the Wilmington Trust Company ("the bank"); a demand note therefor was executed by the corporate officers. On the back of the note, the plaintiff, his wife and the defendants (then husband and wife) signed a provision unconditionally guaranteeing payment of the note on behalf of Central.[1] Subsequent to this transaction, relations between Mr. Throckmorton and Mr. Collins deteriorated to the point where,

in August, 1973, Mr. Collins left the employ of Central and ceased to be actively involved in the management of the company. Although the Central stockholders discussed terms whereby Mr. Collins was to completely sever his relationship with the company, no agreement was ever reached.

After Mr. Collins' departure from Central, the plaintiff continued to operate the business. However, by mid-1975, Central had become insolvent and simply ceased to do business. The record clearly shows that Central's financial woes, particularly certain problems with the Internal Revenue Service, began before Mr. Collins' departure from the company and continued more or less unabated until the company went out of business.

Apparently Central made no payments on the demand note after 1973. By May, 1975, the bank had become sufficiently concerned about Central's ability to pay the note to institute certain protective actions. Central's assets on deposit with the bank were frozen and demand made on the Throckmortons to satisfy various debts owed by Central to the bank, including the balance on the 1973 note which they and the defendants had guaranteed. On May 30, 1975, pursuant to negotiations between the Throckmortons and the bank, the plaintiff and his wife took out a loan in the amount of $15,402. All of these proceeds were used to satisfy Central's debts to the bank. Of the total, $9,668.73 was paid to satisfy the 1973 note, i. e., $8,800. in unpaid principal plus $868.73 in interest at eight and three-quarters percent per year as specified in the note. In return, the bank assigned its rights under the 1973 note to the plaintiff, individually.

On June 4, 1975, the plaintiff demanded that the defendants reimburse him in full for the amounts he paid in satisfaction of the 1973 note; the defendants refused. The plaintiff subsequently, in his complaint and at trial, reduced his claims against each

---

1. The provision to which these four parties expressly assented stated: "PAYMENT GUARANTEED, Protest, Demand and Notice of Nonpayment Waived." The four thus agreed to become co-guarantors on the note. See 6 Del.C. § 3–416(1). Only one of the co-guarantors, the plaintiff's wife, is not a party to this action. This will be discussed in greater detail, *infra*.

defendant to one-quarter of the amounts thus paid by him. The Superior Court entered judgment against each defendant in the amount of $3,492.86 allocated as follows: $2,417.18 representing the proportionate one-quarter share of each defendant on the demand note as paid by the plaintiff on May 30, 1975; $909.35 representing interest on such proportionate shares at the rate of eight and three-quarters percent per year from June 15, 1975 to November 1, 1979 (the Trial Court order was entered in November, 1979); and $166.33 representing awards of attorney fees at the rate of five percent of the amounts otherwise assessed against each defendant.

Several arguments are raised by the defendants on this appeal attacking the judgment in its entirety as well as each of the individual components thereof. We address these contentions *seriatim*.

I

Essentially the defendants' first argument is that the evidence below was insufficient to support the judgment. The argument runs thusly:

Subsequent to Mr. Collins' departure from the company, and during the period when Central paid nothing on the 1973 note, the plaintiff was solely in control of the management of Central's affairs. During this period Central's financial status was shakey and the company eventually became insolvent. Under these facts the plaintiff owed a fiduciary duty to the stockholders and the company's creditors to preserve Central's assets for the payment of Central's debts. Therefore, before the plaintiff could require proportional contribution by the defendants (who, as co-guarantors on the 1973 note, were contingent creditors of the company) for his payment of the 1973 note, the defendants contend he had to prove that Central had no assets with which to pay the bank at the time the plaintiff paid off the note. Moreover, they argue that under the circumstances of this case the plaintiff had to show that Central's insolvency and inability to pay the note in 1975 were not due to wrongful appropria-

tion of Central's assets by the plaintiff for his own use.

At this point in their argument the defendants seek support from an evidentiary presumption which they claim arises from the plaintiff's failure to produce certain documentary evidence relating to his conduct of the company's business. In October, 1977, two years prior to trial, the defendants filed a request for production of certain corporate documents relating to the plaintiff's conduct of Central's business. Although the plaintiff never complied with this formal request, the defendants never followed it up, i. e., no motion to compel production was filed. Moreover, the defendants did not engage in any other discovery directed to eliciting facts concerning the plaintiff's conduct of Central's affairs. They did not attempt to depose the plaintiff or other witnesses who might have had knowledge of the pertinent facts, and they did not file any interrogatories.

Despite their failure to diligently pursue all available avenues of discovery, the defendants insisted at trial that they were entitled to a presumption that the documents which the plaintiff failed to produce would have been unfavorable to him, i. e., they would have tended to show that the plaintiff "milked" the company by somehow wrongfully disposing of its assets. The defendants contend that had they been given the benefit of this presumption the Trial Court could not have granted judgment to the plaintiff. We find the defendants' arguments on this point as unpersuasive as they are elaborate.

In rejecting the defendants' arguments, we do not embrace the plaintiff's counter-argument that the records sought were immaterial in this case. The right of a surety or guarantor, upon being compelled to pay more than his just proportion of the principal's debt, to be reimbursed by his fellow guarantors for the excess is grounded on equitable principles. *Stearns Law of Suretyship* § 11.18 (5th ed. 1951). Equity requires that "where one of two or more obligors in suretyship aids in the commission of a default by the principal, either

by his negligence or his active misconduct, he cannot assert a claim in contribution." *Id.* at § 11.24; see also Restatement of the Law of Security § 161 (1941). Obviously, the corporate records sought by the defendants might have provided information relevant to the question of whether Central's default on the 1973 note was somehow caused by wrongful conduct by the plaintiff. We also recognize the general rule that where a litigant intentionally suppresses or destroys pertinent evidence, an inference arises that such evidence would be unfavorable to his case. See *Equitable Trust Co. v. Gallagher*, Del.Supr., 77 A.2d 548 (1950); see also *Larsen v. Romeo*, Md. Ct.App., 254 Md. 220, 255 A.2d 387 (1969).

■ Acceptance of these legal propositions does not, however, aid the defendants in the case at bar. There was absolutely no evidence presented to show that the plaintiff had intentionally destroyed the corporate records sought by the defendants. Rather, the only evidence on this issue was that the records had been lost through no fault of the plaintiff when Central's accountant, who was then holding the records for the company, died shortly after the defendants' request for production was filed. Moreover, even if the defendants were entitled to some kind of inference from the plaintiff's failure to produce the records, "this inference does not amount to substantive *proof* and cannot take the place of proof of a fact necessary to the [defendants'] case." *Larsen v. Romeo, supra,* 254 Md. 220, 255 A.2d at 391 (citation omitted). The defendants relied at trial on unsupported allegations of misconduct by the plaintiff which supposedly prevented Central from meeting its obligations under the 1973 note. The nature of this alleged misconduct has never been specified, and the defendants did not present a scintilla of evidence in support thereof at trial. The plaintiff, on the other hand, testified extensively at trial as to his considerable efforts during the two years after defendant Robert Collins' departure from Central to keep the company financially afloat. It was well within the Trial Judge's discretion, sitting without a jury, to find the plaintiff's testimony on these matters credible. Having done so, the Trial Judge was entitled to conclude, as he did, that the plaintiff had established a *prima facie* case of entitlement to proportional contribution by the defendants as *co-guarantors* on the 1973 note, which the defendants simply failed to rebut. Given the total absence of evidence to support the defendants' claims, we find no error in the conclusions of the Trial Court in this regard.

## II

In order to understand the defendants' next argument, it is necessary to state the general rule governing contribution rights among co-guarantors. The Restatement of the Law of Security, *supra,* § 154 provides in pertinent part:

"(1) A surety who has discharged more than his proportionate share of the principal's duty is entitled to contribution from a co-surety.

(a) who has consented to the surety's becoming bound, in the proportionate amount of the net outlay property expended...."

*Cf. De Paris v. Wilmington Trust Co.,* Del. Supr., 104 A. 691, 695 (1918); see also Restatement of the Law of Security §§ 141(d), 149.

The undisputed facts show that the 1973 note was guaranteed by four persons. Consequently, each was potentially liable for one-quarter of Central's default on the note. See Restatement of the Law of Restitution § 85, Comment (e) (1937). Although the complaint alleged the plaintiff personally satisfied Central's default by paying the entirety of the principal and interest owed on the note in May, 1975, the defendants argue that the trial proofs show that the plaintiff's wife, the fourth co-guarantor, contributed equally with the plaintiff to this satisfaction.[2] Thus, of the $9,668.73

---

2. There was no direct evidence on this point at trial. Rather, the defendants infer this conclusion from the undisputed fact that the 1973 note was satisfied with joint funds received by

paid to satisfy the 1973 note, the defendants claim the plaintiff contributed only half ($4,834.36). Of that amount the plaintiff was personally liable for half, which constituted one-quarter of Central's total default ($2,417.18). Thus argue the defendants, the maximum amount of contribution which the plaintiff could recover from the two defendants was $2,417.18, i. e., the amount in excess of his share of Central's default which the plaintiff personally paid to satisfy the 1973 note. Therefore, the defendants argue that the Trial Court's decision, which was premised on the assumption that the plaintiff satisfied the entire default by Central (or at least three-quarters thereof), erroneously awarded judgment against each defendant in the amount of $2,417.18, double the excess amount which the plaintiff allegedly paid in satisfaction of the note and, thus, double the total amount of contribution which he was entitled to recover from the defendants collectively.

Whether this be viewed as an evidentiary argument, i. e., that the evidence below was insufficient to support the judgment, or as a procedural argument, i. e., that the plaintiff failed to join an indispensible or necessary party (his wife, the fourth co-guarantor), see Superior Court Civil Rule 19 and the Restatement of the Law of Security, supra, § 164, we find no merit in it.

■ In the first instance, we note that this defense argument was not raised in any pre-trial pleadings or during the course of the trial; rather, it was first brought to the attention of the court below in a motion for a new trial filed several days after the trial. The defense claims that it was unable to raise the matter earlier because they first became aware of the plaintiff's wife's alleged role during the trial. However, had the defendants diligently employed the discovery techniques available to them, they could have ascertained any pertinent facts necessary to have raised this claim in a timely fashion in the Trial Court. Given

this lack of diligence in pre-trial discovery, it may now be persuasively argued that the defendants have effectively waived their right to be heard on this issue. So far as the defendants' argument is premised on the possible procedural defects noted above, we hold that there has been a waiver. The potential Rule 19 defense was not raised prior to or "at the trial on the merits" and was, therefore, waived pursuant to Rule 12(h)(2). See 5 Wright & Miller, *Federal Practice and Procedure* § 1392 (1969).

■ Even considering the evidentiary aspect of the argument on the merits, we are not persuaded that the defendants are entitled to appellate relief. Although there was no direct testimony concerning the respective amounts which the plaintiff and his wife contributed to satisfaction of the 1973 note, the bank's assignment of the note to the plaintiff, individually, gives rise to a reasonable inference that, as between the plaintiff and his wife, the plaintiff alone was entitled to seek contribution from the defendants. While it would obviously be desirable to have a more detailed and explicit factual record on this point, the failure to so develop the record must be laid at the defendants' doorstep. Therefore, we will not disturb that portion of the Trial Court's judgment which requires each defendant to pay the plaintiff $2,417.18 for their contributive shares on the demand note as satisfied.

### III

The defendants' final argument is that the Trial Court erred in its awards of pre-judgment interest and attorney fees. The language of the Trial Court's order clearly shows that these amounts were determined pursuant to the terms of the demand note assigned to the plaintiff. We conclude that this was erroneous.

■ The plaintiff's rights to recover from the defendants are based on the equitable principles governing contribution be-

---

the plaintiff and his wife as proceeds from the loan they took out with the bank on the same day the 1973 note was paid off. We again note

that the May 30, 1975 loan to the Throckmortons was for $15,402., of which only $9,668.73 went to satisfy the 1973 note.

tween co-guarantors, not the terms of the instrument on which the co-guarantors have become liable. See 38 C.J.S. *Guaranty* § 115a (1943). Allowing the plaintiff to expand his rights as co-guarantor against the defendants simply because he obtained an assignment of the note upon satisfaction thereof would serve to undermine the basic tenets of guaranty law. See *Weitz v. Marram,* Md.Ct.Spec.App., 34 Md.App. 115, 366 A.2d 86 (1976). We believe that the more equitable and proper rule is that:

> "The judgment against defendant guarantors should carry interest at the legal rate and should not impose an attorney's fee in the absence of any express contract [between co-guarantors] or statute providing for such fee."

38 C.J.S. *Guaranty, supra,* § 115c. Therefore, the plaintiff was not entitled to the award of attorney fees.[3]

 As for the award of pre-judgment interest, we reach the same conclusion but for a different reason. The general rule cited above gave the plaintiff a theoretical entitlement to pre-judgment interest, but at the legal rate of six percent not the note rate of eight and three-quarters percent as ordered by the Trial Court. However, this right is not self-executing; in order to get such interest in his judgment, the plaintiff had to request it, at least by way of a general allegation of damages in an amount sufficient to cover his actual losses plus interest.

> "Interest recoverable as damages has been regarded as an incident to the debt, and usually may be recovered under the general allegation of damages without being specially claimed, provided the damages claimed are laid in sufficient amount to cover the actual loss plus interest to the time of trial. If plaintiff is entitled to interest as part of his damages as a matter of law or right, the court should allow it under a prayer for general relief."

25 C.J.S. *Damages* § 140c (1966); see also 22 Am.Jur.2d *Damages* § 288 (1965).

Here the plaintiff was entitled to pre-judgment interest as a matter of right. See *Metropolitan Mutual Fire Ins. Co. v. Carmen Holding Co.,* Del.Supr., 220 A.2d 778 (1966), *E. M. Fleischmann Lumber Corp. v. Resources Corp. International,* D.Del., 114 F.Supp. 843 (1953), and *Superior Tube Co. v. Delaware Aircraft Industries,* D.Del., 60 F.Supp. 573 (1945). However, in his separate demands for relief against each defendant in the complaint, the plaintiff simply requested judgment "in the amount of $2,417.18, plus reasonable attorney's fees and costs of this action." The complaint was never amended to include a demand for interest, and the matter was not raised or discussed at trial. We hold that under these circumstances it was error for the Trial Court to award to the plaintiff interest which he never requested.

\* \* \* \* \* \*

In conclusion, we modify the judgment below to eliminate the awards of interest and attorney fees, and we affirm the judgment as so modified.

AFFIRMED, as modified.

---

**3.** This was an action to enforce equitable rights and was not an action "for the enforcement of any note ... or other instrument of writing . . ." Therefore, 10 *Del.C.* § 3912 has no application.